THE PEOPLE OF THE STATE OF NEW YORK, Plaintiffs in Error, *v.* FRANK M. BAKER, Defendant in Error.

A State may adjudge the *status* of one of its own citizens towards a non-resident; and may authorize to that end such judicial proceedings as it sees fit; but the judgment can have no effect within the bounds of another State, so as to fix upon a citizen of the latter a *status* against his will, and without his consent, which is in hostility with the laws of the sovereignty of his allegiance.

A court of another State cannot adjudge the dissolution of the marital relations of a citizen of this State, domiciled and actually residing here during the pendency of the judicial proceedings in such State, without a voluntary appearance on his part therein, and with no actual notice to him thereof; and this, although the marriage was solemnized in such other State.

Such a judgment, therefore, is not a defense, to an indictment against a citizen of this State, for bigamy.

Upon the trial of such an indictment, the prisoner gave in evidence the record of a judgment in another State, in an action by his wife for divorce; the court charged, in substance, that if the divorce had been obtained under the laws of this State, though the prisoner would not have been guilty of the crime of bigamy, yet he would have been guilty of a misdemeanor. *Held*, no error; that as bearing upon the question of the guilty or innocent purpose of the accused, it was a proper consideration for the jury that a man, from whom his wife has obtained a divorce, *a vinculo*, does violate the laws of this State, which forbid to him another marriage so long as she lives.

*Kinnier* v. *Kinnier* (45 N. Y., 535); *Hunt* v. *Hunt* (72 id., 217); *Cheever* v. *Wilson* (9 Wal., 108); *Pennoyer* v. *Neff* (95 U. S., 714), distinguished. *Baker* v. *The People* (15 Hun, 256), reversed.

(Argued December 18, 1878; decided January 21, 1879.)

Error to the General Term of the Supreme Court, in the fourth judicial department, to review order reversing a judgment of the Court of Sessions in and for the county of Cayuga, entered upon a verdict convicting defendant in error of the crime of bigamy ; the order granted a new trial. (Reported below, 15 Hun, 256.)

The indictment charged, and the evidence on the part of the prosecution tended to show, that in the year 1871 defendant in error was married to one Sallie West, in the State of Ohio, and that in November, 1874, while she was still living, he married one Eunice Nelson, at Auburn, in this State.

The defendant in error offered in evidence an exemplified copy of the record of a judgment in the Court of Common Pleas, of the county of Seneca, State of Ohio, in an action by said Sallie against him for divorce. The record showed proof of service of process on defendant by publication; there was no personal appearance by him. The judgment purported to dissolve the marriage, on the ground of " gross neglect of duty," on his part. The statute of the State of Ohio was also offered in evidence, by which it appeared that the proceedings in said action were regular and sufficient, and that the judgment was valid and binding under the laws of that State. Said evidence was objected to on the part of the People, upon the ground that that court had no jurisdiction over the defendant or the subject matter. The court held that the evidence was incompetent for any purpose save as showing the intent of defendant, and received the evidence for that purpose only, to which his counsel duly excepted.

The further material facts appear in the opinion.

*H. R. Selden*, and *S. E. Payne*, district attorney, for plaintiffs in error. The constitutional provision that full faith and

credit shall be given in each State to the judicial proceedings of any other State is limited to cases where the courts have obtained jurisdiction. (*Thompson* v. *Whitman*, 18 Wall., 457; *Mills* v. *Duryea*, 7 Cranch, 481; *Shumway* v. *Stillman*, 6 Wend., 448.) Courts cannot obtain jurisdiction over citizens of another State without personal service in their own State. (*Irby* v. *Wilson*, 1 Dev. & Bat. [N. C.], 576; *Jackson* v. *Jackson*, 1 J. R., 424; *Borden* v. *Fitch*, 15 id., 121; *Bradshaw* v. *Heath*, 13 Wend., 407; *Visher* v. *Visher*, 12 Barb., 140; *Phelps* v. *Baker*, 60 id., 108; *Holmes* v. *Holmes* 4 Lans., 388; *Kerr* v. *Kerr*, 41 N. Y., 272; *Kinnier* v. *Kinnier*, 45 id., 541, 542; *Hoffman* v. *Hoffman*, 46 id., 301; 2 Kent, 109.) Even a personal service of the process in this State would not give jurisdiction in another State, (*Dunn* v. *Dunn*, 4 Pai., 425.) It is unnecessary to prove intent or guilty knowledge in case of bigamy. (*Hayes* v. *People*, 25 N. Y., 390.)

*A. P. Laning*, for defendant in error. If the divorce granted in Ohio was in all respects regular and valid, and the statutory requirements of that State were fully met, it is entitled to full faith and credit in every State in the Union. (U. S. Const., § 1, art. 4; *Livingstone* v. *Md. Ins. Co.*, 6 Cranch, 274; *Talbot* v. *Seeman*, 1 id., 1, 38; *Raynham* v. *Canton*, 3 Pick., 293; *Consequa* v. *Willings*, 1 Pet. Cir. R., 225, 229; *Church* v. *Hubbard*, 2 Cranch, 187–238; *James* v. *Allen*, 1 Dall., 188; *Phelps* v. *Holker*, id., 261; *Hitchcock* v. *Arcken*, 1 Caines, 460 479; *Hiffe* v. *Iliffe*, Kerby, 119; *Vandervoorst* v. *Smith*, 3 Caines, 155; *Yeaton* v. *Fry*, 5 Cranch, 335–343; *McElmoyne* v. *Cohen*, 13 Pet., 312; *D'Arcy* v. *Ketchum*, 11 How.; *Ins. Co.* v. *French*, 15 id., 406 ; *Thompson* v. *Whitman*, 18 Wall., 457 ; *Mills* v. *Duryea*, 7 Cranch, 481; *Hampden* v. *McCornell*, 3 Wheat., 234; 1 Kent's Conn. Lectures, 12, pp. 243–244; *U. S.* v. *Amedy*, 11 Wheat., 392; *Buckner* v. *Finlay*, 2 Pet., 592; *Owing* v. *Hall*, 9 id., 627; *Stacey* v. *Thrasher*, 6 How., 44; *Bn'k Alabama* v. *Dalton*, 9 id., 522; *Booths* v. *Clark*, 17

l., 322; *Craig* v. *Brown*, Pet. C. C., 354; *Gardner* v. *Lindo*, 1 Cr. C. C., 78; *Turner* v. *Waddington*, 3 Wash. C. C., 126; *Catlin* v. *Underhill*, 4 McL., 199.) A wife may acquire a separate domicile whenever it is necessary or proper for her to do so. (*Cheever* v. *Wilson*, 9 Wall., 108–123; *Strader* v. *Graham*, 10 How. [U. S.], 82; *Bennett* v. *Bennett*, Deady, 299; 2 Bishop on Marriage and Divorce, 475; *Barber* v. *Barber*, 21 How. [U. S.], 582; *Cannel* v. *Buckle*, 2 P. Will., 243, 244; *Ex parte Strangeways*, 3 Ark., 478; *Brooks* v. *Brooks*, Pr. Ch., 24; *Wheeler* v. *Wheeler*, 2 Dana H., 310; *Denton* v. *Denton*, 1 J. C., 2, 364; *Purcell* v. *Purcell*, 4 Hen. Mansf., 507; *Williams* v. *Donner*, 16 Jur., 336; 9 Eng. L. & Eq., 598; 2 Robt., 505.) It is sufficient for the validity of a divorce that one of the parties only be domiciled in the country, and the citation need not be served personally on the defendant. (2 Bish. on Div. [5th ed.], 148, § 163 a; *Ditson* v. *Ditson*, 4 R. I., 87, 102, 103; *Pennoyer* v. *Neff*, Rep. Mch. 20, 1878, 353; Code, § 438, sub. 4; *Schaefer* v. *Bushness*, 24 Wis., 372, 376, 377; *People* v. *Hovey*, 5 Barb., 117; Cooley Const. Lim. [2d ed.], 401 and note; *Irby* v. *Wilson*, 1 Deo. & But. Eq., 568; *State* v. *Schlachter*, Phillips' N. C., 520; *Harding* v. *Alden*, 9 Greenl. 140; 2 Kent Com. [6th ed.], 110, n.; *Mansfield* v. *McIntyre*, 10 Ohio, 27; *Tolen* v. *Tolen*, 2 Blackf., 417; *Hull* v. *Hull*, 2 Strob. Eq., 174; *Cooper* v. *Cooper*, 7 Ohio, 238; *Harrison* v. *Harrison*, 16 Alb., 499; *Gleason* v. *Gleason*, 4 Wis., 662; *Thompson* v. *The State*, 28 Ala., 12; *Schafer* v. *Bushnell*, 24 Wis., 327; *Hood* v. *Hood*, 11 Allen, 196; *Beard* v. *Beard*, 21 Ind., 321; *Rhyms* v. *Rhyms*, 7 Bush., 861; *Wilcox* v. *Wilcox*, 10 Ind., 436; *Schreck* v. *Schreck*, 32 Texas, 378; *Ponsford* v. *Johnson*, 2 Blatch., 51; *Dickson* v. *Dickson*, 1 Yerg., 110; Shelf. on Marr. & Div., 476, 478; 4 Kent Con., § 54; 2 Black Com., 130; 2 Ed. Chanc. Rep., 596; 5 Barb. [S. C.] Rep., 117; Story Conflict of Laws, §§ 620, 621; *People* v. *Hovey*, 5 Barb., 117; 3 Rev. St. [6th ed.], 964, part 4, chap. 1, art. 2, § 13; 1 Hale Pleas of the Crown, 1 R. L., 113; *Baker* v. *People*, 2 Hill,.

325; 2 Bishop Marr. & Div., § 164; *Borden* v. *Fitch*, 1 J. R., 127; *Bradshaw* v. *Heath*, 13 Wend., 407; *McGif-ford* v. *McGifford*, 31 How., 18; *People* v. *Dawell*, 25 Mich., 247.)

Folger, J. As we look at this case, it presents this question : Can a court, in another State, adjudge to be dissolved and at an end, the matrimonial relation of a citizen of this State, domiciled and actually abiding here throughout the pendency of the judicial proceedings there, without a voluntary appearance by him therein, and with no actual notice to him thereof, and without personal service of process on him in that State.

We assume, in putting this proposition, that the defendant in error was in the situation therein stated. We think that it may properly be thus assumed. It is true, that the first which is disclosed of the defendant in error, by the error-book, shows him in another State, in the act of marriage with Sallie West, the other party in the judicial proceedings there held. It does not appear where his domicile then was, nor where it had been. After the marriage, however, the persons then married, resided at Rochester, in this State, at a time prior to the commencement of those judicial proceedings ; and he continued to reside in that city until in 1875, and after the final judgment therein was rendered. We look in vain in the error-book for any exception, proposition or suggestion, which presents or indicates, that the case was tried at the sessions, upon the theory or contention that the defendant in error was domiciled in Ohio, or temporarily abiding there, at any time during the pendency of the judicial proceedings in that State.

We come back then to the question we have above stated. We are ready to say, that as the law of this State has been declared by its courts, that question must be answered in the negative. The principle declared in the opinions has been uniform. Such is the utterance in *Borden* v. *Fitch* (15 J. R., 121); *Bradshaw* v. *Heath* (13 Wend., 407); *Vischer* v.

*Vischer* (12 Barb., 640); *Kerr* v. *Kerr* (41 N. Y., 272);
*Hoffman* v. *Hoffman* (46 id., 30). Nor does it avail against
them to say, that the facts of those cases do not quadrate
exactly with those of the case before us. The utterances,
which we speak of, were not inconsiderate expressions, nor
*dicta* merely. They were considerate steps in the reasoning,
leading to the solemn conclusion of the court. And as
touching the question in its general relations, we may cite
*Kilburn* v. *Woodworth* (5 J. R., 37); *Shumway* v. *Stillman*
(4 Cow., 292); S. C. (6 Wend., 447); and *Ferguson* v.
*Crawford* (70 N. Y., 253), where the whole subject is
elaborately considered. We know of no case in our courts
which has questioned the principle declared in these authori-
ties. *Kinnier* v. *Kinnier*, 45 N. Y., 535,—sometimes
claimed to be a departure — does not. It is recognized
there, that to make valid in this State a judgment of divorce,
rendered by a court of another State, that court must have
" the parties within its jurisdiction," must " have jurisdiction
of the subject matter and of the parties," who " must be
within the jurisdiction of the court." *Hunt* v. *Hunt*, 72
N. Y., 217 does not. That case was close. It went upon
the ground, built up with elaboration, that both parties to
the judgment were domiciled in Louisiana when the judicial
proceedings were there begun and continued and the judg-
ment was rendered, and were subject to its laws, including
those for the substituted service of process. We meant to
keep the reach of our judgment within the bounds fixed by
the facts in that case.

We must and will abide by the law of this State, as
thus declared, unless the adjudications in which it has
been set forth have been authoritatively overruled in that
regard. As this is a question of Federal cognizance, we
ought to inquire whether the national judiciary has
declared anything inconsistent therewith. *Cheever* v. *Wil-
son*, 9 Wall., 108, is cited. Clearly that case is not
applicable. There both the parties to the judgment made
a voluntary appearance, and the divorce court had jurisdic-

tion of their persons, as it had of the subject-matter. " It had jurisdiction of the parties, and the subject-matter," says the opinion in the case cited. It had jurisdiction of the plaintiff in the divorce proceedings, by her voluntary appearance in court, as a petitioner, and showing a *bona fide* residence in that State, in the way fixed therefor by its statute law. It had jurisdiction of the person of the defendant, by his voluntary appearance in the court, and putting in a sworn answer to the petition. The *dictum* in the case of *Pennoyer* v. *Neff*, (95 U. S., 714), even had it the force of a judgment, does not go to the extent needed, to overrule these decisions in our State. It is there held, that to warrant a judgment *in personam*, there must be personal service of process, or assent in advance to a service otherwise. It is also said, that a State may authorize judicial proceedings to determine the *status* of one of its own citizens towards a non-resident, which will be binding within the State, though had without personal service of process or appearance. It is not said, much less is it authoritatively decided, that a judgment thus got may do more than establish the *status* of the parties to it, within the State in which the judgment is rendered. The case just cited is the latest annunciation known to us of the Supreme Court of the United States. It does not overrule the declarations of our own courts. It rather sustains them. We must and do concede, that a State may adjudge the *status* of its citizen towards a non-resident; and may authorize to that end such judicial proceedings as it sees fit; and that other States must acquiesce, so long as the operation of the judgment is kept within its own confines. But that judgment cannot push its effect over the borders of another State, to the subversion of its laws and the defeat of its policy; nor seek across its bounds the person of one of its citizens, and fix upon him a *status*, against his will and without his consent, and in hostility to the laws of the sovereignty of his allegiance.

It is said, that a judicial proceeding to touch the matrimonial relation of a citizen of a State, whether the other

party to that relation is or is not also a citizen, is a proceeding *in rem*, or, as it is more gingerly put, *quasi in rem*. But it was never heard, that the courts of one State can affect in another State the *rem* there, not subjected to their process, and over the person of the owner of which no jurisdiction has been got. Now, if the matrimonial relation of the one party is the *res* in one State, is not the matrimonial relation of the other party a *res* in another State? Take the case of a trust, the subject of which is lands in several States, the trustees all living in one State. Doubtless the courts of a State in which the trustees did not live and never went, but in which were some of the trust lands, could proceed *in rem* and render a judgment without personal service of process, which would determine there the invalidity of the trust and affect the possession and title of the lands within the jurisdiction of those courts ; but it would not be contended, that the judgment would operate upon the trustees or upon the trust lands, in other States, so as to affect the title, or the possession, in those States. It could operate only on the *rem* upon which the process of those courts could lay hold. And why is not the matrimonial relation of a citizen of New York, as it exists in that State, if it is a *res*, as much exempt from the effect of such a judgment as lands in that State, and the trust under which they may be held ? Is not any other relation of mankind as much a *res* for the touch and adjudication of courts as that of husband and wife ? Take the relation of a minor orphan to its guardian, or to those entitled by law to be its guardians. That is a *status*, in kind as the matrimonial relation. The courts of one State may act and appoint a guardian for such a child, if it is within their territorial jurisdiction, and remains there ; but the appointment is not operative *per se* in another State, into which the child goes. (*Woodworth* v. *Spring*, 4 Allen, 321.) It is, of course, to be granted, as before said, as a general proposition, to which it is not now needful to suggest limitations, that each State may declare and adjudge the *status* of its own citizens. And, hence, if one party to a

proceeding is domiciled in a State, the *status* of that party, as affected by the matrimonial relation, may be adjudged upon and confirmed or changed, in accordance with the laws of that State. But has not the State, in which the other party named in the proceedings is domiciled, also the equal right to determine his *status*, as thus affected, and to declare by law what may change it, and what shall not change it ? If one State may have its policy and enforce it, on the subject of marriage and divorce, another may. And which shall have its policy prevail within its own borders, or shall yield to that of another, is not to be determined by the facility of the judicial proceedings of either, or the greater speed in appealing to them. That there is great diversity in policy is very notable. It does not, however, seem to tend to a state of harmonious and reliable uniformity, to set up the rule that the State in which the courts first act shall extend its laws and policy beyond its borders, and bind or loose the citizens of other sovereignties. It will prove awkward, and worse than that, afflictive and demoralizing, for a man to be a husband in name and under-disabilities or ties in one jurisdiction, and single and marriageable in another. Yet it is only in degree that it is harder than the results of other conflicts in laws. It is more sharply presented to us, because tenderer, more sacred, more lasting relations, of greater consequence, are involved ; and because the occasions calling attention to the conflict have, of late years, become so frequent. Whatever we may hold in the United States, it will not change results in foreign countries. And in seeking for a rule which shall be of itself, from its own reason, correct, we ought to find or form one, if may be, that is generally applicable. However submissively we must concede to every sovereignty the right to maintain such degree of strictness in the domestic relations as it sees fit, within its own territory, there is no principle of comity which demands that another sovereignty shall permit the *status* of its citizens to be affected thereby, when contrary to its own public policy, or its standard of public morals.

We are not, therefore, satisfied with the doctrine that rests the validity of such judicial proceedings upon the right and sovereign power of a State to determine the *status* of its own citizens, and because it may not otherwise effectually establish it, asserts the power to adjudge upon important rights, without hearing the party to be affected, and without giving him the notice which is required by the principles of natural justice, he being all the while beyond its jurisdiction.

Besides, a just consideration of what is a proceeding *in rem*, and of the effect of a judgment therein, shows that the latter does not reach so far as is contended for it. It is a proceeding *in rem* merely. The judgment therein is not usually a ground of action *in personam* in another jurisdiction, for, as a proceeding *in personam*, or as giving foundation for one, the court gets no jurisdiction. (*Pauling* v. *Bird's Exrs.*, 13 J. R., 192.) How then, upon such basis, can the judgment be brought here and made the foundation of an action against one personally ; and if not a means of offence *in personam*, how a means of defence to the person, when sought to be held for personal acts, in violation of the laws of his allegiance ?

The consequences of such want of harmony in polity and proceeding, we have adverted to. The extent of them ought to bring in some legislative remedy. It is not for the courts to disregard general and essential principles, so as to give palliation. Indeed, it is better, by an adherence to the policy and law of our own jurisdiction, to make the clash the more and the earlier known and felt, so that the sooner may there be an authoritative determination of the conflict.

It is urged upon us that our State cannot with good grace hold invalid this judgment of a court of Ohio, when our own Code provided, at the time of the rendition of it, for the giving of judgment of divorce against a non-resident, by like substituted service. It is true that, until the new Code of Procedure, such had been the case. (2 R. L., 197, § 1; 1 id., 489, § 9; 2 R. S., 144, § 38; id., 185; id., 187, § 134; Laws of 1862, chap. 246, § 1; Old Code, § 135; but see

New Code, § 438, sub. 4.) This is but to say that, on the principle of the comity of States, we should give effect to this judgment. But this principle is not applied, when the laws and judicial acts of another State, are contrary to our own public policy, or to abstract justice or pure morals. The policy of this State always has been, that there may of right be but one sufficient cause for a divorce *a vinculo;* and that policy has been upheld, with strenuous effort, against persistent struggles of individuals to vitiate and change it. And though it is lightly, we must think, sometimes said that it is but a technicality, that there must be personal notice and chance to be heard, to make a valid judgment affecting personal rights and conditions, we cannot but estimate the principle as of too fundamental and of too grave importance, not to be shielded by the judiciary, as often as it is in peril.

We are aware that there are decisions of the courts of sister States to the contrary of the authorities in this State. They are ably expressed; they are honestly conceived. They are, however, on one side of a judicial controversy, the dividing line whereof is well marked, and is not lately drawn. It would not be profitable to review and discuss them. They are prevalent within the jurisdictions in which they have been uttered, and we cannot expect to change them there. They are in opposition to the judgments of our own courts, which we must respect, and with which our reason accords. It remains for the Supreme Court of the United States, as the final arbiter, to determine how far a judgment rendered in such a case, upon such substituted service of process, shall be operative, without the territorial jurisdiction of the tribunal giving it.

There is an exception still to be noticed. The court, in charging the jury, stated to them that, if the divorce had been obtained under the laws of this State, though the defendant in error would not have been guilty of the crime of bigamy, yet he would have been guilty of a misdemeanor, and that that was a pertinent consideration for them. We do not understand that this was meant for an instruction

that they could convict him of the misdemeanor, if they did not find that he was guilty of the higher offence. The charge is to be taken in connection with the reception in evidence of the Ohio record, on the question of his intent. As bearing merely upon his guilty or innocent purpose, it was not inappropriate for the jury to consider that, though a man, from whom his wife has been divorced *a vinculo*, in this State may not, by marrying again, incur the penalties for bigamy, he does violate the decree, which forbids to him another marriage, so long as she lives.

We are of the opinion that the judgment of the General Term should be reversed, and that of the Sessions be affirmed.

All concur, except CHURCH, Ch. J., dissenting.

Judgment accordingly.