(1 App. Div. 571.)

### PEOPLE ex rel. KARLSIOE v. KARLSIOE.

(Supreme Court, Appellate Division, First Department. February 21, 1896.)

1. FOREIGN DIVORCE—EFFECT IN NEW YORK.

A decree of divorce obtained by a husband in another state, where he had acquired a residence after abandoning his wife, and leaving her in New York, she having no knowledge of the action or of his residence, and having never been asked to share his domicile in that state, is void, and is no defense to the husband's prosecution on the ground of abandonment under the statute.

2. SAME—ABANDONMENT OF FAMILY—EVIDENCE.

On trial of a husband for abandoning his wife (Code Cr. Proc. § 899, subd. 1), defendant may show by cross-examination of his wife, who is, complainant, or other testimony, her financial circumstances.

Appeal from court of general sessions, New York county.

William Karlsioe, on complaint of his wife, Agnes Karlsioe, was convicted of being a disorderly person, in having abandoned his family, and appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Hugh O. Pentecost, for appellant.

George W. Lyons, for respondent.

BARRETT, J. The defendant was convicted by a police magistrate of being a disorderly person, in having abandoned his wife and child, without adequate support, and having left them in danger of becoming a burden upon the public, and having neglected to provide for them according to his means. Code Cr. Proc. § 899, subd. 1. This conviction, upon a further hearing, was reaffirmed by the court of special sessions, and the judgment of the latter court was affirmed by the court of general sessions. From this latter judgment the defendant appeals.

The defendant complains that the special sessions rejected a decree of divorce which he claimed to have obtained in the state of Kentucky. This decree was properly rejected. The Kentucky court was without jurisdiction of the person of the present complainant, and the decree was therefore void under the rule laid down in the cases in this state. The complainant was never in the state of Kentucky, never appeared there, and had no notice of the divorce proceedings. In fact, she knew nothing about them. Prior to his going to Kentucky, the defendant had been arrested here several times for the abandonment of his wife. Upon his third arrest he was paroled by the police justice. He promised to appear subsequently, but failed to do so. That was the last the complainant saw of him. As she says, he ran away. She was asked where he went, and her reply was that she did not know, but that she heard afterwards that he went to Kentucky. He undoubtedly went there to relieve himself, as he hoped, from further coercive proceedings here, by quietly severing the marriage tie. It is needless to say that, under the well-settled law of this state, he failed in his purpose. People v. Baker, 76 N. Y. 78; O'Dea v. O'Dea, 101 N. Y. 23, 4 N. E. 110; Cross v. Cross, 108 N. Y. 628, 15 N. E. 333;

v.37 N.Y.s.no.4—31

De Meli v. De Meli, 120 N. Y. 485, 24 N. E. 996; Williams v. Williams, 130 N. Y. 193, 29 N. E. 98.

The effort to bring the case within the principle of Hunt v. Hunt, 72 N. Y. 217, is futile. ° The Kentucky domicile of the husband, even if genuine, was not here the domicile of the wife. Owing to his misconduct, she was clearly entitled to maintain her independent domicile in this state. He never, in good faith, offered her a home in Kentucky, and his purpose throughout has plainly been to get rid of her and of his marital obligations.

If this were the only question in the case, we would have no hesitation in affirming the judgment. Unfortunately, however, the special sessions erred to the defendant's prejudice in shutting out competent testimony which might well have affected the judgment. The prosecution proved, by the direct testimony of the complainant, the abandonment and her poverty. But the defendant was not permitted to disprove these essential facts, either upon the complainant's cross-examination or by independent testimony. The complainant testified that she had no income or means of support. It was sought upon cross-examination to shake this testimony, but every question tending in that direction was excluded. We do not mean to suggest that an affirmative answer to the numerous questions which were propounded to her, and ruled out, would necessarily have absolved the defendant. They would not have absolved him had they simply disclosed the fact that others had charitably kept the complainant out of the workhouse, or the fact that she herself had put off the evil day by her own exertions. But they might have entirely disproved her direct testimony, and have shown that she was not poor; that she had ample means of support; and that she was not in least likely to become a burden upon the county. They might have shown, indeed, that she was amply provided for, and that her circumstances were far better than her husband's. The questions were properly framed with a view to eliciting such facts, and it was a violation of the defendant's rights to exclude them. The court also erred in excluding testimony to disprove the abandonment, and tending to show that the complainant had refused to live with the defendant; that he had offered her a home; that he had asked her to come and live with him; and that she declared she would not live with him in any place he might provide. It is impossible to sustain a judgment of conviction where the accused has thus been deprived of his legal rights, and where substantially everything save the complainant's story of her wrongs has been treated as irrelevant.

The judgment must be reversed. All concur.