Pohlman *v.* Pohlman.

<br>

CHRISTIAN POHLMAN

*v.*

E. LOUISA POHLMAN.

[Decided June 22d, 1900. Filed February 11th, 1901.]

1. Where one living in New York City was deserted by his wife, and tried to induce her at various times to live with him, but was refused, and about a year after the desertion he moved to New Jersey, but carried

Pohlman *v.* Pohlman.

on business in New York City, and about three years later tried again to induce his wife to live with him, but was again refused, and a few months later brought suit for divorce, petitioner's residence in New Jersey for more than two years was sufficient to give the court jurisdiction, where defendant was served within the jurisdiction, and she voluntarily appeared in the suit.

2. Where a husband petitioned for a divorce for desertion, the matrimonial offence having been persisted in against his will for more than four years, the fact that the wife, who lived in New York, was desirous that the divorce be granted, and voluntarily appeared in court, but made no defence, will not amount to collusion, and prevent the granting of a decree.

Heard *ex parte* on the coming in of the master's report in favor of the divorce.

*Mr. William R. Barricklo,* for the petitioner.

PITNEY, V. C.

The ground of divorce stated in the petition is desertion, and the evidence taken before the master thoroughly establishes it.

The parties were domiciled in the city of New York for many years before the marriage, which took place on January 3d, 1895. The defendant had independent means of her own, and the petitioner was a tailor employed as a cutter in a large tailoring establishment in New York City, and shortly after the marriage entered into business on his own account in New York, which he still pursues.

They lived together in apartments in New York City until June 27th, 1895, when the defendant, while the petitioner was absent attending to his ordinary business, moved her furniture away from the house, and abandoned the petitioner. He afterwards sought her out at various times, and under various circumstances, and tried to induce her to return to live with him, but she persistently declined.

In the latter part of August, 1896, the petitioner, who had been living as a bachelor since his wife deserted him in 1895, moved his personal belongings, clothing, &c., to Hoboken, and took board there, and has continued to board there ever since, but still carries on his business in the city of New York.

In the fall of 1899 he consulted counsel, and made one more

effort to induce his wife to live with him, and called on her at the Park Hotel, New York City, with a friend, for that purpose. She declined, and gave him a declination in writing.

The petition was filed on the 7th of February, 1900, four months after this interview. Process of subpœna was issued and.served upon the defendant by the sheriff of Hudson county. How the defendant happened to come to New Jersey, and the sheriff to know of her presence here, does not appear, but the inference, of course, is that she came for the purpose of being served with process, and that the petitioner's solicitor was advised of her presence. Afterwards she appeared by solicitor in the suit, but made no defence. The cause went to a reference in the ordinary way, and the master reported in favor of the divorce. The master saw nothing, of course, but a copy of the order of reference. The circumstances of defendant coming to New Jersey to be served with process would not naturally come to his knowledge.

For the reasons stated in *McGean* v. *McGean, 46 Atl. Rep. 656,* and *Tracy* v. *Tracy, 15 Dick. Ch. Rep. 25,* recently decided by me, I feel constrained to believe that the petitioner came to New Jersey for the purpose of securing a divorce on the ground of desertion, which ground was not.available for that purpose in the State of New York. I am also satisfied that he did maintain an actual residence in New Jersey, such as many business men maintain here while engaged in business in neighboring cities, for over three years before petition was filed.

The case does not present any question as to the jurisdiction of the person, such as arose in *Streitwolf* v. *Streitwolf, 13 Dick. Ch. Rep. 563; Dumont* v. *Dumont, 45 Atl. Rep. 107,* and the two cases above mentioned just decided by me.

But two questions still remain: First, whether, although there be jurisdiction of the person obtained by actual service within the territorial limits, an actual residence without the *animus manendi* is sufficient to give the court jurisdiction; and second, whether the voluntary appearance of the defendant in this court indicates such collusion between the parties as to bar the petitioner's remedy.

With regard to the first question, I come to the conclusion

that it must be resolved in favor of the petitioner. There is here no fraud practiced on the court such as was found in the case of *Magowan* v. *Magowan, 12 Dick. Ch. Rep. 322;* for while I have always dealt with that case upon the understanding that the wife there actually appeared to the husband's suit in the foreign court, yet there was in that case no actual residence, and other questions were involved, indicating clearly that an actual fraud was practiced upon the court, and also upon the wife. Here no fraud is practiced on the court, nor upon the wife. She has voluntarily appeared by competent counsel, and the cause of action is real, and not simulated, as in the *Magowan Case* and in the *Dumont Case.*

The next question is as to whether the fact that the wife is so far desirous of having a divorce, and one that shall be valid, as to induce her to voluntarily appear in a court where she is not obliged to appear, amounts to collusion?

Here, again, there is no reason to believe that any facts have been suppressed, or that the original desertion was committed and persisted in by any connivance or collusion between the parties for the purpose of creating a cause for divorce.

Collusion is defined by Mr. Bishop (*2 Bish. Mar., D. & S. § 249*) as

"a corrupt combining of married parties to procure a sentence or judicial order by some false practice; as, for one of them to appear to or in fact do what otherwise would be ground for divorce, or in any way to deceive the court in a cause, thus seeking its interposition as for a real injury."

And again, by the English courts, defined to be "An agreement between the parties for one to commit, or appear to commit, a fact of adultery [or other marital offence amounting to a cause for divorce], in order that the other may obtain a remedy at law as for a real injury. Real injury there is none where there is a common agreement between the parties to effect their object by fraud in a court of justice." And again: "If a party to a suit, by agreement with the other, procures the withdrawal from the notice of the court of facts relevant to the charge which is imputed to him or her, that is collusion."

And by Mr. Browne, in his *Commentary on Divorce p. 29:*

Pohlman *v.* Pohlman.

"Collusion is the corrupt agreeing together of married parties, for one of them apparently or in fact to commit a breach of marriage duties, or for the two to deceive the court regarding such alleged breach, to obtain thereby a divorce or separation as for a real injury. In other words, it is the agreement of the parties to make up a case for the purpose of obtaining a divorce."

Now, there is nothing of that kind in this case. The matrimonial offence was committed without the knowledge or consent of the husband, and was persisted in for four years and upwards against his will. That gives him a vested right to the remedy, and he cannot be deprived of that right by the mere fact that his wife also wishes to have a divorce; and it cannot defeat the injured party's cause for the defendant to facilitate his proceedings.

Says Mr. Bishop (*2 Bish. Mar., D. & S.* § *225*) :

"Both parties, to make out a case of collusion, must combine—collusion being a conspiracy. And nothing is collusion which does not implicate the one against whom it is set up. It is not collusion [he continues], for one guilty of a matrimonial offence to desire to be divorced; or for one to commit such offence, expecting, while furnishing ground for divorce, to stimulate thereby the other party to apply for it; or, where cause exists, for both to wish the matrimonial relation suspended or dissolved—none of these things, no analogous things, will constitute collusion. The question is whether the plaintiff has suffered a real injury, and *bona fide* seeks relief; if so, there is no collusion. To hold that the innocent party should be refused the remedy simply because the other desires it, putting it, therefore, in the power of the delinquent to arrest the course of justice, would be, in effect, to allow a divorce when the defendant had gone a certain way in matrimonial wickedness, but to refuse it when he had taken another step."

The conduct of the defendant in voluntarily submitting to the jurisdiction of the court was natural, under the circumstances, for the purpose, if for no other, of having the validity of the divorce which her husband proposed to obtain from her put beyond question. The rules obtaining in the courts of New York are peculiar on that subject, and if she had not appeared to this suit, and the petitioner had obtained the divorce after service upon her out of the jurisdiction, her position in the State of New York would have been equivocal. This appears from the case of *People* v. *Baker, 76 N. Y. 78.* There the de-

fendant, Baker, while living in New York, had been sued by his former wife in a court of Ohio for divorce, and a decree of divorce rendered against him there based upon substituted service, that is, service in the State of New York. Relying upon that decree, he contracted a marriage in New York, was indicted for bigamy based on such second marriage, convicted and sentenced to state prison. If that case is still law in New York, the defendant herein, in the case supposed, if she desired to marry again, and did so, would be liable to criminal prosecution for bigamy.

I come, therefore, to the conclusion that the petitioner is entitled to a decree.