IRVING O. BALL, Appellant, *v.* MELVIA S. CROSS, Respondent.

Matrimonial actions — action for annulment of marriage on ground that wife was not freed from former marriage at time of marriage to plaintiff — when record fails to show that defendant was divorced from first husband in state whose decree is recognized in this state.

In an action brought by a resident of this state to have his marriage to defendant declared void because at the time it was contracted the defendant was married to another, it appears that three years previous to the marriage of plaintiff and defendant the latter and another were married in the state of Missouri; that later defendant and the first husband moved to Texas and that state was their last matrimonial domicile. A year or two later this husband left defendant and went to Nevada where he began an action of divorce founded on charges of cruelty. Defendant never went to Nevada and the summons in such action was served by publication and the defendant neither answered nor appeared in the action. It was found that the defendant " was a resident of the State of Missouri and was then domiciled in and a citizen either of the State of Missouri or the State of Texas," and the decree was granted. Defendant's first husband, the plaintiff in that action, is still living. *Held,* that the record herein is imperfect; that the defendant was at one time a citizen of Texas, with no finding of a change of citizenship so that this court must regard her as domiciled there when the divorce was decreed and as to how Texas regards such a decree there is no evidence; that the findings of the trial court justify a doubt whether the defendant was not in fact domiciled in Missouri where the foreign divorce seems to be recognized. *Held,* further, that the findings of fact do not justify the conclusions of law. Once married, her former husband still living, it is not made to appear that defendant was ever validly divorced

from him, and hence the judgment of the trial court dismissing plaintiff's complaint herein should be reversed. (*O'Dea* v. *O'Dea*, 101 N. Y. 23, distinguished.)

*Ball* v. *Cross*, 190 App. Div. 711, reversed.

(Argued April 29, 1921; decided May 31, 1921.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 30, 1920, unanimously affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

*George Flint Warren, Jr.*, for appellant. The decree divorcing the defendant from Greene C. Lescher is void even though the divorced defendant did not reside in the state of New York and even though the decree would be recognized as valid in the state of Missouri. (*O'Dea* v. *O'Dea*, 101 N. Y. 23; *Borden* v. *Fitch*, 15 Johns. 121; *Bradshaw* v. *Heath*, 13 Wend. 407; *Vischer* v. *Vischer*, 12 Barb. 640; *McGiffert* v. *McGiffert*, 31 Barb. 69; *Kerr* v. *Kerr*, 41 N. Y. 272; *Hoffman* v. *Hoffman*, 46 N. Y. 30; *People* v. *Baker*, 76 N. Y. 82; *Cunningham* v. *Cunningham*, 206 N. Y. 341; *Hubbard* v. *Hubbard*, 228 N. Y. 81; *Schenker* v. *Schenker*, 181 App. Div. 621; 228 N. Y. 600; *Percival* v. *Percival*, 106 App. Div. 111; 186 N. Y. 587; *International Text Book Co.* v. *Connelly*, 206 N. Y. 188; *Southworth* v. *Morgan*, 205 N. Y. 293.)

*William Greenthal* for respondent. The Nevada decree of divorce should be recognized by this court, especially since neither this defendant nor her former husband, Greene C. Lescher, was a resident or citizen of the state of New York at the time it was granted. (*Kaufman* v. *Kaufman*, 177 App. Div. 162; *Schenker* v. *Schenker*, 181 App. Div. 621; *Kaiser* v. *Kaiser*, 192 App. Div. 400.)

ANDREWS, J. The plaintiff is and always has been domiciled in this state. On April 30, 1917, he married

the defendant in Washington, D. C. A few days afterwards the parties separated and have never since lived together. They have had no children. This marriage is claimed to be void for the reason that at the time it was contracted the defendant already had a husband.

It appears that in 1914 the defendant and one Lescher were married in Missouri and lived and cohabited in that state. Later they moved to Texas, and Texas was their last matrimonial domicile. In 1916 Lescher left the defendant and went to Reno, Nevada. The defendant never went to Nevada, nor did she and Lescher ever there acquire a matrimonial domicile. Lescher began an action of divorce in Nevada founded on charges of cruelty. The summons was served by publication and the defendant neither answered nor appeared in the action. At this time it is found that she " was a resident of the State of Missouri and was then domiciled in and a citizen either of the State of Missouri or the State of Texas." The decree was granted. Lescher is still living. Under the circumstances is the judgment of the Nevada court to be recognized as valid in this state?

Had the defendant then been domiciled in and, therefore, a citizen of New York, as no matrimonial domicile was ever acquired in Nevada, the decree would be ignored by us. (*Atherton* v. *Atherton*, 181 U. S. 155; *Haddock* v. *Haddock*, 201 U. S. 562; *People* v. *Baker*, 76 N. Y. 78.) Public policy will not permit us to give effect, as against our own citizens, of a judgment affecting their marital status, so obtained on grounds thought by us to be insufficient. On the other hand were the contest between Lescher and the defendant, neither ever having been domiciled here, we would not interfere. Nor would we had the second husband at the time of the second marriage not been one of our citizens, and had the marriage been valid where contracted. (*Hubbard* v. *Hubbard*, 228 N. Y. 81; *Schenker* v. *Schenker*, 181 App. Div. 621; affd., 228 N. Y. 600.) In the case before us, however, if the

second marriage was invalid, the plaintiff, domiciled here, is entitled to relief. Whether it is invalid depends upon the status of the defendant when it occurred. If the state of which she was then a citizen recognizes such a decree as that obtained in Nevada, and gives it full force and effect, then it is not for us to say that it is void as to her. It is for that state to determine what its policy requires. It is the final judge as to how far, as to its own citizens, the principles of comity shall be applied. If the defendant is freed of all the obligations of the Missouri marriage in the state of her domicile, she is freed everywhere.

We are told that the contrary is held in *O'Dea* v. *O'Dea* (101 N. Y. 23). This is a mistake. Mr. and Mrs. Kollmyer were married in Lewiston, N. Y., and lived there for twenty-six years. They then separated. Mrs. Kollmyer returned to Toronto, Canada, apparently her original domicile. Mr. Kollmyer went to Ohio, of which state he became a resident. He there obtained a divorce by default and upon the service of the summons by publication on the ground of desertion. Later, Mrs. Kollmyer returned to New York and there married O'Dea. We held this latter marriage to be void. The basis of this decision was the question of the domicile of the parties to the original marriage at the time of the divorce. In his dissenting opinion Judge DANFORTH states that the domicile of the wife was then either in Ohio or in Canada. If the former, the decree was concededly valid. If the latter, there is no evidence that under the laws of Canada the divorce was not valid there also. We held, however, that the authority of *People* v. *Baker* concluded us. In that case the divorce in controversy had obtained against one domiciled in New York. This reference indicates that we believed Mrs. Kollmyer had at the time of her first marriage acquired a domicile in New York, and that in view of the stipulation that after the separation Mrs. Kollmyer

" returned to the house of her parents and friends" (in Toronto) " until she went to New York and was married " to O'Dea and the finding merely that she went in 1860 to Toronto and continued to " reside " there until 1865, this domicile was not lost in 1864 when the Ohio divorce was obtained.

Of what state, then, was the defendant a citizen at the time of the divorce obtained by her first husband? It is found that their last matrimonial domicile was Texas. That involves the proposition that at one time both husband and wife, actually or constructively, were domiciled in that state. Although Lescher went to Nevada, no matrimonial domicile was ever acquired there. That she gained an independent domicile in that state is negatived by the findings. But she did become a resident of Missouri. Yet the court fails to find that she also was there domiciled. " She was then domiciled in and a citizen of either the State of Missouri or the State of Texas."

Therefore at one time a citizen of Texas, with no finding of a change of citizenship, we must regard her as domiciled there when the divorce was decreed. And as to how Texas regards such a decree there is no evidence. In support of the judgment we might doubtless examine the statutes of Texas or the reports of its courts, as they are presumptive evidence of its written and unwritten law. (Code Civ. Pro. sec. 942.) No statute on the subject is called to our attention and while we have examined the Texas reports we do not find the rule adopted stated so clearly and finally as to justify us in holding in the absence of the testimony of some one learned in the law of Texas and of all discussion by counsel, that a definite decision has been reached. In *Stuart* v. *Cole* (42 Tex. App. 478) it is stated that a decree of divorce is a proceeding *in rem* and so is conclusive as to the parties although one was a " non-resident." Ten years later, in *Jones* v. *Bartlett* (189 S. W. Rep. 1107), the dis-

cussion seems to imply that unless the state in which the divorce was obtained was at least presumptively the state of the matrimonial domicile, the decree would not be binding as against a defendant who was a citizen of Texas. In *Givens* v. *Givens* (195 S. W. Rep. 877) the court cites *Haddock* v. *Haddock* and remarks that the case goes farther than it is necessary for the court to go in the discussion before it. Later, in *Richmond* v. *Sangster* (217 S. W. Rep. 723), the opinion while citing *Olmsted* v. *Olmsted* (190 N. Y. 458) says it is unnecessary for it to decide that a foreign decree rendered upon substituted service is void.

The findings of the trial court justify a doubt whether the defendant was not in fact domiciled in Missouri, where the foreign divorce seems to be recognized. (*Gould* v. *Crow*, 57 Mo. 200; *Anthony* v. *Rice*, 110 Mo. 223.) If upon a new trial this should be shown to be the truth, we should regard the rule of the state of which she was a citizen as controlling, even should the Texas courts retain some jurisdiction over the marriage relation. Not the public policy of Texas but the public policy of Missouri, would be involved under such circumstances.

The record before us is, therefore, imperfect. The findings of fact do not justify the conclusions of law. Once married, her former husband still living, it is not made to appear that she was ever validly divorced from him. The judgments appealed from should be reversed and a new trial ordered.

HISCOCK, Ch. J., CHASE, HOGAN, CARDOZO, McLAUGHLIN and CRANE, JJ., concur.

Judgments reversed, etc.