AMELIA F. DEAN, Respondent, *v.* ROBERT J. DEAN,
Appellant.

Constitutional law — jurisdiction — comity — husband and
wife — divorce — divorce obtained by husband in another
State, the courts of which had obtained no jurisdiction over
wife who resided in foreign country — remarriage of husband
and removal to this State — wife who has also removed here
may maintain action in our courts for divorce — divorce of
husband no defense — full faith and credit clause of Federal
Constitution does not require recognition of such judgment.

1. Where a husband and wife are domiciled in Canada and the
husband, abandoning his wife and children, goes to Pennsylvania
and falsely stating that he does not know the place of residence of
his wife, obtains an order for the service of a summons upon her by
publication in an action brought by him in that State for divorce,
and thereafter obtains a decree, without, however, the Pennsylvania
courts acquiring jurisdiction of the wife, and, remarrying, removes
to this State, the wife, who has also removed here, may maintain
an action in our courts for divorce and support for herself and children,
and the divorce obtained by the husband in Pennsylvania is no defense
thereto. (*Ball* v. *Cross*, 231 N. Y. 329, followed.)

2. The full faith and credit clause of the Federal Constitution does
not command the courts of this State to accord recognition to a
judgment so procured.

*Dean* v. *Dean*, 213 App. Div. 360, affirmed.

(Argued October 23, 1925; decided November 24, 1925.)

APPEAL from a judgment of the Appellate Division
of the Supreme Court in the fourth judicial department,
entered July 29, 1925, affirming an interlocutory judg-
ment in favor of plaintiff entered upon a decision of the
court on trial at Special Term.

*Ray M. Stanley* and *O. Clyde Joslin* for appellant.
The judgment upon the undisputed facts is contrary
to the settled law of the State. (*Kaufman* v. *Kaufman*,
160 N. Y. Supp. 19; 177 App. Div. 162; 163 N. Y. 566;
*Percival* v. *Percival*, 94 N. Y. Supp. 909; *Powell* v.

*Powell,* 211 App. Div. 750; *Hubbard* v. *Hubbard,* 228 N. Y. 81; *Ball* v. *Cross,* 231 N. Y. 329; *De Meli* v. *De Meli,* 120 N. Y. 485; *Katz* v. *Katz,* 203 App. Div. 672; 197 N. Y. Supp. 307; *Barber* v. *Barber,* 151 N. Y. Supp. 1064.) The judgment violates the full faith and credit clause of the Constitution of the United States. (*Atherton* v. *Atherton,* 181 U. S. 155; *Bell* v. *Bell,* 181 U. S. 175; *Streitwolf* v. *Streitwolf,* 181 U. S. 179; *Haddock* v. *Haddock,* 201 U. S. 564; *Andrews* v. *Andrews,* 188 U. S. 15.)

*Alfred L. Harrison* and *J. H. Madden* for respondent. The State of New York recognizes the status of a party in the country of which said party is a citizen. (*Ball* v. *Cross,* 231 N. Y. 329.)

CRANE, J. The plaintiff and the defendant were residents and citizens of Ontario, Canada. Three children were born of the marriage, two now living. The husband left his wife and went to Pennsylvania. He failed and refused to support his family. Later he came to Buffalo. Thereupon, the wife with her two children came to that city and sued him for divorce and support for herself and children. They were his children, and he was as much bound to support them in New York as he was in Canada. Stepping across the St. Lawrence river into the States did not change his obligations as a father. Our courts were open to the wife. She could maintain her action here in this State. (Civil Practice Act, sect. 1147.)

The husband set up as a defense that he had been divorced in the State of Pennsylvania. It is conceded that the Pennsylvania courts had no jurisdiction over the wife. She did not know of the action, and was not served by any process known to the law. In order to get the Pennsylvania courts to act, the husband falsified, stating that he did not know the whereabouts of the wife. The Pennsylvania decree of divorce would not be recognized in Canada, the domicile of the wife. (*King* v.

16

*Brinkley,* 14 Ontario Rep. 434.)  The husband could not go to Canada without being liable to support his wife and children.  The wife comes to the State of New York, as it is the only place where she can get relief.  The husband is here; he has kept out of Canada.  It is conceded that if the wife had been domiciled here, our courts would afford her relief; that we would not recognize the Pennsylvania decree obtained under the circumstances stated.  Why should the fact that she was domiciled in Canada make any difference?  The wife is still the wife of the defendant in Canada, and he is still her husband.  His children remain his offspring here in New York, requiring food and shelter, just as they would in Canada.  The policy of the State of New York, I venture to assert, is in the maintenance of marriage and morality. These will be aided by affording the wife relief in our courts, rather than by turning her out, when we know that she can get help nowhere else.  I know of no authority which holds that the general policy of this State limits its aid to its own citizens.  In fact, I consider the case of *Ball* v. *Cross* (231 N. Y. 329) as having settled the law for this case in favor of the maintenance of this action.

If there are any complications growing out of the husband's remarriage, he has brought them upon himself, and has not the law to blame.

The judgment should be affirmed, with costs.

CARDOZO, J.  Plaintiff and defendant were married in Ontario, Canada, and lived there together till February, 1919.  The husband then left the matrimonial domicile, and abandoned his wife and children.  He lived for a time in Buffalo, and later in Erie, Pennsylvania.  While domiciled in Pennsylvania, he brought suit against his wife for divorce in the courts of that State, charging her with desertion.  Upon the false statement that he did not know her whereabouts, he obtained an order for the service

of process by publication.   He was granted a judgment of divorce on November 5, 1923.   Soon afterwards he came back to Buffalo after having married again.   The present plaintiff, his first wife, did not appear in the Pennsylvania divorce suit, and did not know that it was pending.   She remained in Ontario until March, 1924, when she took up her home in Buffalo.   She found her husband living with another woman, and sued him for divorce.

We have said that the husband abandoned his wife and children when he left the matrimonial domicile.   There is evidence for the conclusion, and against it.   The husband on his side maintained that the wife refused to follow him.   The trial judge, weighing the probabilities, gave credence to the wife.   It is true that in his decision he did not find the fact of abandonment in so many words. He stated it, however, in his opinion as his inference from the evidence.   He found, moreover, in his decision that on November 5, 1923, the date of the Pennsylvania judgment, the wife was domiciled in Ontario.   If the husband had not abandoned her, her domicile would have followed his.   Reading the opinion and the decision together, we cannot doubt that in the view of the trier of the facts the husband was at fault.   A finding of abandonment will, therefore, be implied (*Ogden* v. *Alexander*, 140 N. Y. 356, 362).

The situation then is this: The husband after deserting his wife in the matrimonial domicile in Ontario, obtained upon constructive service of process a divorce in Pennsylvania.   The full faith and credit clause of the Constitution of the United States (Art. 4, § 1) does not command us to accord recognition to a judgment so procured (*Haddock* v. *Haddock*, 201 U. S. 562).   The only question is whether comity or public policy, or, to put it differently, our own interpretation of the conflict of laws, should prompt us to concede a recognition that we are at liberty to refuse. We do not need to inquire what our conclusion would be if the issue of abandonment had been resolved in favor of

the husband.   In that event, the wife, though she remained in Ontario, would have been under a duty to live with her husband wherever he offered her a home. In the view of the law, his domicile would have been hers.   A different problem would be before us for solution if it thus appeared that the Pennsylvania court, in decreeing a divorce, was adjudicating the status of parties whose domicile was there (cf. *Cheely* v. *Clayton*, 110 U. S. 701, 705; *Franklin* v. *Franklin*, 190 Mass. 349; *Loker* v. *Gerald*, 157 Mass. 42, 45; and *O'Dea* v. *O'Dea*, 101 N. Y. 23, explained in *Ball* v. *Cross*, 231 N. Y. 329). We do not even have to forecast the decision that would be made if they had' been living separate by consent (cf. *Winston* v. *Winston*, 165 N. Y. 553, 555).   We confine ourselves to the facts as found.   The wife having been deserted by her husband, might maintain a domicile of her own (*Williamson* v. *Osenton*, 232 U. S. 619; *Perkins* v. *Perkins*, 225 Mass. 82), and she chose to maintain one in Ontario, till later she changed it to New York.   She has never consented that her husband acquire a home apart from her, nor barred herself by misconduct from objecting to his doing so.   In these circumstances, the incapacity of the divorce decree of Pennsylvania to affect the status of the abandoned wife, does not depend upon some local policy established by New York for the protection of citizens or residents.   It does not have its origin in the need of preserving the domestic law against evasion by one spouse to the prejudice of the other.   It results from the general principles that govern the extraterritorial recognition of jurisdiction in actions of divorce (*Perkins* v. *Perkins*, *supra; Haddock* v. *Haddock*, *supra*, at p. 570; *Ball* v. *Cross*, *supra*).

We do not mean that these principles have validity as law, *ex proprio vigore*, irrespective of conflicting conceptions of expediency or justice.   The policy behind them is always local in the sense that each State, aside from constitutional restrictions, may formulate its own con-

ception for itself. The like may be said of the conflict of laws generally. The conception of justice prevalent at home will override an opposing conception prevalent abroad, but the conception prevalent at home may exact justice to the stranger as well as justice to the resident. So we think it does. The wife domiciled in Canada and there abandoned by her husband, became by her marriage a party to a relation which the courts of Pennsylvania have attempted to destroy. They have done this, though there has been no submission to the jurisdiction by her, upon the basis of a domicile which the erring husband has wrongfully set up apart from her. We think the judgments of this court leave no escape from the conclusion that according to the standards of justice prevalent among us, injustice would be done if that attempt were to prevail. This being so, the divorce decree of Pennsylvania ought not to be recognized as valid in New York unless it would have been recognized as valid in the country in which the wife was domiciled at the time when the decree was made (*Ball* v. *Cross, supra; Perkins* v. *Perkins, supra*). If the courts of her domicile were satisfied, we might follow where they led (*Armitage* v. *Attorney-General,* 1906 P. 135; *Ball* v. *Cross, supra*). But Canada does not recognize the binding force of the decree. The law of Ontario to that effect was proved upon the trial (*King* v. *Brinkley,* 14 Ontario L. R. 434). We find nothing in our public policy to justify a holding that the wife, who remained a wife while she kept her domicile in Ontario, should be deemed to have ceased to be one when she changed her domicile to New York.

If there is need of other support for this conclusion, it is given by the husband's fraud. He obtained an order for the publication of the summons in local newspapers of Erie county, Pennsylvania, upon the false suggestion that the wife's whereabouts were unknown. The purpose as well as the effect of this misstatement was to keep her

in ignorance of the suit. We do not need to say that for such a fraud alone the judgment would be disregarded if jurisdiction, as recognized internationally, were otherwise complete. At least the fraud will help us to determine whether a recognition dependent upon conceptions of public policy and justice, shall be granted or withheld. An abandoned and defrauded wife asks us to maintain her status as it was fixed by the law of her domicile at the date of the fraudulent decree. We cannot say that conceptions of public policy and justice require us to change it.

The judgment should be affirmed with costs.

LEHMAN, J. (dissenting). I assume, though with some doubt, that the evidence is sufficient to justify the findings that while the defendant was domiciled in Pennsylvania, the plaintiff continued to be domiciled in Ontario, and that both were domiciled in New York at the time of the commission of the alleged adulteries and the commencement of the action. I further assume that we have a right to supplement the findings actually made by a finding that the defendant abandoned the plaintiff when he moved from their home in Ontario. Doubtless if the plaintiff had been domiciled in New York at the time of the alleged abandonment, at the time of the divorce and at the time of the commencement of the action, established public policy of the State as defined and enforced by our courts would preclude our courts from giving any force or effect to the Pennsylvania decree. Doubtless too our courts would give full force and effect to the Pennsylvania decree, if at the time the Pennsylvania divorce was granted to the defendant the wife was domiciled either in Pennsylvania or any other State which recognized its validity. Here the question to be determined is whether we should deny force and effect to the decree when the wife at the time it was granted was domiciled in a State which would as against its own residents or citizens refuse it effect.

Our public policy must guide and control our decision in this case. It is said that this court has already indicated in the case of *Ball* v. *Cross* (231 N. Y. 329) that the public policy of the State where the wife is domiciled when the divorce is granted determines the force and effect to be given to a foreign divorce. In that case the court was called upon to determine the marital status of a wife domiciled in another State who entered into a second marriage after her first husband had obtained a decree of divorce without personal service upon her in a State where the wife was not domiciled and where the parties had never lived together. We held that since the wife could enter into a second marriage only if she was at that time unmarried and since the law of the State where she was domiciled must determine *her* marital status, the decisive factor in determining the validity of the second marriage is the effect given to a foreign divorce by the law of the State of her domicile. If there it freed her from her matrimonial bonds she is free everywhere. If there she is still bound by marriage ties then she may enter into valid marriage nowheres. In the case before us the findings establish that the defendant was domiciled in Pennsylvania when the decree was granted. There the decree was valid, and there *the defendant* had a right to enter into a subsequent marriage. He did so and now we are asked, at the suit of a wife who did not reside in this State at the time of the divorce or during any period before her husband left her, to declare the second marriage invalid. We pass in this case upon *the husband's* marital status as affected by the divorce decree in Pennsylvania where *he* was domiciled at the time. May we say that the decisive factor in such determination is the law of the State where the parties were domiciled while living together and in which the wife's domicile continued?

I recognize the anomaly involved in a rule that marital status may be divided so that one party to the marriage is free while the other party is bound; that a wife may be

said to have a living husband, while the husband has no living wife. The anomaly is due to the fact that a State may adjudicate the marital status of one party to a marriage if domiciled there, though such adjudication may have no extraterritorial effect if the other party is domiciled elsewhere. So long as that is the law its results may be disturbing, yet we have recognized that that is the law. " We must and do concede, that a State may adjudge the status of its citizen towards a non-resident; and may authorize to that end such judicial proceedings as it sees fit; and that other States must acquiesce, so long as the operation of the judgment is kept within its own confines. But that judgment cannot push its effect over the borders of another State, to the subversion of its laws and the defeat of its policy; nor seek across its bounds the person of one of its citizens, and fix upon him a status, against his will and without his consent, and in hostility to the laws of the sovereignty of his allegiance." (*People v. Baker,* 76 N. Y. 78.)

The rule set forth in *People* v. *Baker* (*supra*) has been consistently followed by our courts. It represents a public policy so well defined that the courts may perhaps not disregard it even though it results at times in anomaly or injustice. As stated above, however, the limitation which our public policy places upon the power of a State to adjudicate the marital status of its own citizen is that the judgment shall not be pushed across the bounds of *our* State to the subversion of *our* laws, and the defeat of *our* policy, nor fix upon one of *our* citizens a status without his consent *in hostility to the laws of this sovereignty.* In the present case at the time of the Pennsylvania divorce the plaintiff was not a resident of this State and the question is whether our policy impels us to hold that after she became a resident here we should disregard the judgment of the Pennsylvania courts which dissolved the marriage of its own citizen.

In all cases in which heretofore we have held that our

public policy forbids us from giving effect here to a decree of divorce granted by a State where the defendant was not domiciled, the defendant was not only not within the jurisdiction of the court granting the divorce, but was a resident of this State. Our public policy is not directed against all decrees of divorce granted to one party by a court of a State other than the State where the parties were domiciled during the time they lived together, for in some circumstances such decrees are authorized by our own statute. (Civ. Prac. Act, section 1147.) "The reason for the stated policy of this State is its statutory adoption of the rule that there may be of right but one sufficient cause, to wit, adultery, for absolute divorce. (*People* v. *Baker*, 76 N. Y. 78, 88.) * * * The policy of this State is not embodied in any legislative enactment or is not a rule of universal law. It exists to promote the permanency of the marriage contracts and the morality of the citizens of the State. Whether or not the operation of a foreign decree of divorce in a given case will contravene the policy or wrong or injure citizens of the State is exclusively for its courts to determine." (*Hubbard* v. *Hubbard,* 228 N. Y. 81.) Heretofore we have not held that our public policy requires us to refuse to give effect to a foreign divorce obtained where one party to the marriage was domiciled except where the parties were at some time domiciled here together and the one party has not removed from this State. Logical basis for insisting upon our views of the permanence of the marriage relation and that only one cause should be recognized for its dissolution exists only where this State was at one time the matrimonial domicile of the parties, and the laws of this State fixed the obligations of the marriage. In such case we may say that we will not recognize the right of one party without the consent of the other to remove to a foreign jurisdiction and thereby against the will of the other change the nature and permanence of the marriage relation so fixed and defined. This State

to that extent may protect its own citizens. It is not called upon to protect the citizens of another State nor to uphold the policy of another State in regard to marriage.

The validity and effect of the foreign decree of divorce must be determined by the position of the parties at the time it was rendered. At that time the wife was a resident of Ontario. Concededly, if the public policy of that jurisdiction led it to recognize the validity of the divorce, we should recognize it also. A decision that we will not recognize the validity of the divorce must be based upon the view that our public policy requires that its validity should be decided under the law of the State of the wife's domicile; and that the public policy of that State denies it effect against the wife domiciled there. It has been said that we arrived at our decision in *Ball* v. *Cross* (231 N. Y. 329) by similar application of what has become known as the doctrine of "renvoi," but though the decision in that case may demonstrate that under unusual circumstances there is room for the application of such doctrine, only rarely are such circumstances found. (See article by Professor Lorenzen, 31 Yale Law Journal, 194.) In a case where the court is called upon to determine the status in a foreign jurisdiction of a person then resident there, the public policy of the foreign jurisdiction may be logically decisive; in a case where such person becomes a resident of this State and asks relief in our courts against another resident of this State, decision whether such relief shall be granted or withheld should rest upon our public policy alone.

The decree of divorce and the marriage entered into in reliance thereon were valid in Pennsylvania. In most of the States of the Union that marriage was lawful; under the rules of public policy of this State as defined in earlier opinions of this court, it would be recognized in New York unless one of our citizens was wronged thereby. No citizen was wronged at the time of the decree; no marriage over which this State had jurisdiction was

thereby rendered less permanent; therefore, no public policy of our own was contravened. The character of the second marriage cannot be altered by change of residence of the first wife. Under the laws of her place of domicile when the divorce was granted, the plaintiff was still the wife of the defendant; when we are called upon to determine her status there and at that time we must accept the public policy of her place of domicile since that determines its law. (*Ball* v. *Cross, supra.*) When she comes into this jurisdiction and asks us to hold that the divorce decree was ineffective and must be given no force *here,* we stand upon our own public policy, and our public policy places no obstacle to giving force to a decree of divorce of a sister State which purports to dissolve a marriage of one of its own residents when we have at no time had any jurisdiction over that marriage.. When we decided that our public policy compelled our denial of effect to such a decree against one of our own residents, we recognized that " it will prove awkward, and worse than that, afflictive and demoralizing, for a man to be a husband in name and under disabilities or ties in one jurisdiction, and single and marriageable in another." (*People* v. *Baker, supra* [p. 86].) It seems to me that we should refrain from making such a situation more difficult by enforcing in this State the public policy of another jurisdiction.

I assume for the purpose of this opinion that the fraud which may well be found to exist in the Pennsylvania proceedings does not affect the jurisdiction of the court or render the decree vulnerable to direct attack. In view of the decision of the court on the more general question, it seems unnecessary to consider further the question of the effect of the fraud in rendering the decree absolutely void.

Judgment should be reversed and complaint dismissed.

Hiscock, Ch. J., Pound, McLaughlin and Andrews, JJ., concur with Crane and Cardozo, JJ.; Lehman, J., dissents in opinion.

Judgment affirmed.