(62 App. Div. 437.)

## STARBUCK v. STARBUCK et al.

(Supreme Court, Appellate Division, Second Department. June 20, 1901.)

1. DOWER—FINDINGS—AMENDMENT.

Code Civ. Proc. § 723, provides that the court may amend any process, pleading, or other proceeding at any stage of the action, in the furtherance of justice. The court reserved its decision as to whether a divorce secured in a foreign state barred plaintiff's right to dower, and allowed defendant to introduce the divorce proceedings in evidence, but finally determined that the divorce was not a bar, and excluded the evidence. *Held* that, the controversy being still before the court on motion for a new trial, an amendment of the court's findings to make them conform to the change in proof did not affect the substantial rights of the parties.

2. FOREIGN DIVORCE—SUBSTITUTED SERVICE—DOWER—BAR.

In 1857 plaintiff, a resident of Massachusetts, was married to a resident of New York, and removed to that state, where she resided until 1868, when she returned to Massachusetts, and in 1874 obtained a divorce in Massachusetts on the ground of cruelty. The husband was served personally in New York, but did not appear in the action, and subsequently remarried in Pennsylvania, but continued to live in New York until his death, in 1896. *Held*, that the Massachusetts decree was not binding on the plaintiff in New York, and hence did not bar her right to dower in the husband's lands in New York.

3. SAME—REMARRIAGE—ESTOPPEL.

The fact that the husband subsequently remarried on the strength of plaintiff's decree did not estop plaintiff from claiming dower.

4. SAME—ESTOPPEL BY RECORD.

The Massachusetts decree not being binding on the husband, plaintiff was not estopped of record from claiming dower.

5. LANDS IN TRUST—DOWER—BENEFICIARY'S WIFE—RIGHTS.

Where a trustee executed a written instrument, duly acknowledged, certifying that he held certain lands, which had been conveyed to him in trust for the benefit of S., the widow of S. was entitled to dower in the lands.

Goodrich, P. J., dissenting.

Action by Martha H. Starbuck against Matilda E. Starbuck and others. Interlocutory judgment in favor of plaintiff. Motion by defendants for a new trial, pursuant to section 1001 of the Code of Civil Procedure. Motion denied.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Robert D. Benedict (James E. Carpenter, on the brief), for plaintiff. William N. Dykman, for defendants.

HIRSCHBERG, J. The action is for dower. The plaintiff and William H. Starbuck, now deceased, were married in the commonwealth of Massachusetts on October 14, 1857. At that time she was a resident of that commonwealth. They shortly afterwards moved to this state, where Mr. Starbuck continued to reside until his death, which occurred on the 29th of March, 1896. In consequence of alleged ill treatment, the plaintiff left him in the year 1868, and returned to her parents' home, in Massachusetts, where she remained a resident until after her husband's death, in 1896, when she removed

to, and has ever since been a resident of, this state. While residing in Massachusetts she instituted an action for divorce against her husband on the ground of extreme cruelty, which resulted in a decree in her favor, granted on the 4th day of May, 1874. The papers in the divorce proceedings were served upon her husband personally in this state, but he did not appear in the action, either personally or by attorney, nor did he in any other manner submit himself to the jurisdiction of the Massachusetts court. He subsequently married the defendant Matilda Eliza Starbuck in the state of Pennsylvania, and the minor defendants are children of that union. The real estate which is the subject of the controversy is all situated in this state, and was acquired by Mr. Starbuck after the divorce decree. The question in the case is whether the plaintiff is entitled to dower in the real estate, as the widow of the deceased.

In opening the case upon the trial, the plaintiff's counsel briefly recited the material facts in reference to the divorce proceedings, whereupon the defendants moved for a dismissal of the complaint upon the pleadings and the opening. The decision was reserved, and the defendants excepted. Subsequently the Massachusetts decree was offered in evidence by the defendants, and received against the plaintiff's objections and exception. The learned trial justice on final determination of the case concluded that the decree did not operate to deprive the plaintiff of the rights of widowhood in this state, and he accordingly sustained the plaintiff's objection, and excluded the decree, to which ruling the defendants excepted. Having inadvertently made findings at defendants' request which were based on the evidence furnished by the divorce proceedings as originally admitted, he subsequently changed such findings to conform to the altered condition of the proof, to which the defendants excepted, and they have given written notice of their intention to bring up the order effecting the changes for review upon the hearing of this motion. The case is presented upon defendants' motion for a new trial under section 1001 of the Code of Civil Procedure, and the changes were made after the service of the notice of motion.

Assuming that the technical question presented by the defendants' exception to the amendments is properly before the court, it may be disposed of by the statement that the action of the trial justice in this particular instance in no manner affected the substantial rights of the parties. Under such circumstances, the power to make the amendments is undoubted. Code Civ. Proc. § 723; Beitz v. Fuller, 92 Hun, 457, 459, 36 N. Y. Supp. 950; Deutermann v. Pollock, 30 App. Div. 378, 51 N. Y. Supp. 928; Bohlen v. Railway Co., 121 N. Y. 546, 24 N. E. 932; Heath v. Banking Co., 146 N. Y. 260, 40 N. E. 770. It is not intended to hold generally that the amendment of findings does not affect a substantial right. In this instance, however, the whole controversy is still before the court upon the motion for a new trial, and may be determined on the merits without prejudice in the attitude of the parties, equally whether the decree of divorce be regarded as admitted subject to the plaintiff's exception, or as rejected subject to that of the defendants.

On the vital point presented, viz. the effect of the decree upon the plaintiff's property rights and interests in this state, the argument of the learned counsel for the defendants is ingenious, but, I am compelled to decide, unsound. It realizes the force of the many adjudications which steadily attest the judicial policy of this state in ignoring and disregarding divorces like the one in question, but seeks to destroy the weight of their authority in the particular regard which concerns the object of this action. It is urged that, while the Massachusetts decree was of no binding force upon William H. Starbuck, it did effectually operate to fix the marriage status of the plaintiff as a then citizen and resident of that commonwealth, at least so far that its validity to that extent is not now open to question by her, and that she, therefore, and as a result of her own voluntary act ceased to have a dowable capacity in this state at the time the deceased became seised of the real estate. The argument is derived from certain statements of the courts in the well-known series of divorce cases in this state which acknowledge the validity of such divorces as this one in affecting the marital status of the plaintiffs by whom they are procured, but such statements, I think, are to be limited to the territorial jurisdiction of the foreign state, and were not intended to relate to such status within this state. At all events, it has never been decided that such a divorce as that which the plaintiff procured operated in this state to lawfully terminate the plaintiff's status as Mr. Starbuck's wife, while leaving him, beyond all question, still her lawful husband; yet this anomaly is the necessary result of the defendants' contention. In other words, it is claimed that under the authorities in this state the effect of the Massachusetts decree was to leave Mr. Starbuck a married man, while his wife became a feme sole; he still being lawfully married to a woman who was not his lawful wife. A careful examination of the authorities reveals no such absurdity. The leading cases in the court of appeals are People v. Baker, 76 N. Y. 78, 32 Am. Rep. 274; O'Dea v. O'Dea, 101 N. Y. 23, 4 N. E. 110; Jones v. Jones, 108 N. Y. 415, 15 N. E. 707; Cross v. Cross, 108 N. Y. 628, 15 N. E. 333; De Meli v. De Meli, 120 N. Y. 485, 24 N. E. 996; Williams v. Williams, 130 N. Y. 193, 29 N. E. 98; In re Kimball, 155 N. Y. 62, 49 N. E. 331; Atherton v. Atherton, 155 N. Y. 129, 49 N. E. 933, 40 L. R. A. 291; Winston v. Winston, 165 N. Y. 553, 59 N. E. 273. They all adhere to the general principle enunciated in the Baker Case, supra (page 84, 76 N. Y., and page 278, 32 Am. Rep.)—

"That a state may adjudge the status of its citizens towards a nonresident, and may authorize, to that end, such judicial proceedings as it sees fit, and that other states must acquiesce, so long as the operation of the judgment is kept within its own confines. But that judgment cannot push its effect over the borders of another state, to the subversion of its laws and the defeat of its policy; nor seek across its bounds the person of one of its citizens, and fix upon him a status, against his will and without his consent, and in hostility to the laws of the sovereignty of his allegiance."

In the case of Williams v. Williams, supra, the record of a Minnesota divorce was excluded upon the trial, and the court held that it was properly excluded, "being void." The authorities were col-

lated and considered, and the conclusion reached that a judgment of divorce granted by a sister state without acquiring jurisdiction of the defendant has no effect beyond the limits of the state within which it was granted, and in this state is inoperative and void. Referring to the case of Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654, in connection with Cheely v. Clayton, 110 U. S. 701, 4 Sup. Ct. 328, 28 L. Ed. 298, the court said (page 198, 130 N. Y., and page 99, 29 N. E.):

"The case involved the legality of a legislative divorce granted by the legislature of the territory of Oregon, but the consideration of this question was by the facts of the case confined wholly to the territory within which the decree was granted. Neither case questioned the rule prevailing in this state, and the decree in Maynard v. Hill goes no further than that a,divorce granted without service upon or personal appearance of the defendant establishes the status of the parties to it within the state in which it was rendered. It does not overrule the decisions of this state, but it is in harmony with them, as it has never been denied by our courts that a state may adjudge the status of its citizens towards a nonresident, and that, so long as the operation of the judgment is kept within its own confines, other states must acquiesce."

In Re Kimball, supra, the claim made by the plaintiff herein was urged upon the court, but disregarded. The point was made that:

"The Dakota court had jurisdiction of the plaintiff in the divorce action, who is the appellant herein. As to her, or any party standing upon, urging, or relying upon her status, the decree of divorce is valid."

The court held otherwise, viz. that the decree which the appellant (then Mrs. Semon) obtained in Dakota while a resident of that state was not valid in this state as to her; that she remained Semon's wife in this state, her marital status not being affected here by her decree; that her subsequent marriage to Kimball was accordingly invalid; and that she was properly denied the right to administer on his estate. The court said (page 68, 155 N. Y., and page 332, 49 N. E.) that it was—

"Well settled that the judgment of a court of a sister state has no binding effect in this state, unless the court had jurisdiction of the subject-matter and of the person of the parties, and that want of jurisdiction may always be interposed against a judgment when it is sought to be enforced, or when any benefit is claimed for or under it. Borden v. Fitch, 15 Johns. 121, 8 Am. Dec. 225; Andrews v. Montgomery, 19 Johns. 162, 10 Am. Dec. 213; Shumway v. Stillman, 4 Cow. 292, 15 Am. Dec. 374; Kerr v. Kerr, 41 N. Y. 272."

This case is therefore positive authority for the proposition that if the plaintiff, on the strength of her Massachusetts decree, had remarried in this state, she would not be permitted to administer upon the estate of her second husband, and would be denied that right upon the express ground that she remained in this state the lawful wife of William H. Starbuck, notwithstanding she had procured the decree, and had remarried pursuant to the privilege accorded by it.

In Jones v. Jones, supra, Andrews, J., said (page 423, 108 N. Y., and page 708, 15 N. E.):

"The judgment of another state may be impeached for want of jurisdiction of the person or subject-matter when it comes in question in our courts It is an elementary principle that no court can lawfully adjudge rights of

persons or property in the absence of jurisdiction, and it is firmly settled that a judgment of the court of another state is binding here only so far as the court rendering it had jurisdiction. It is not protected under the constitution and laws of the United States from attack for want of jurisdiction. If rendered without jurisdiction, it is not a judgment, but a mere arbitrary prescription, without force as a judicial proceeding in another forum. Borden v. Fitch, 15 Johns. 121, 8 Am. Dec. 225; Starbuck v. Murray, 5 Wend. 148, 21 Am. Dec..172; Kerr v. Kerr, 41 N. Y. 272; Thompson v. Whitman. 18 Wall. 461, 21 L. Ed. 897. In the determination of the question whether the Texas court acquired jurisdiction of the person of the defendant in the action, it must be conceded at the outset that the service of the citation upon the defendant here, who at the time was a resident and citizen of New York, owing no allegiance to the state of Texas, was utterly void and ineffectual as a means of giving the courts of Texas jurisdiction of the defendant. The process of courts run only within the jurisdiction which issues them. They cannot. be served without the jurisdiction, and courts of one state cannot acquire jurisdiction over the citizens of another state under statutes which authorize a substituted service, or which provide for actual service of notice without the jurisdiction so as to authorize a judgment in personam against the party proceeded against. This question has recently been considered in several cases in this state with a fullness of argument and illustration which leaves nothing to be said, and it is sufficient to refer to the decisions. Kerr v. Kerr, supra; Hoffman v. Hoffman, 46 N. Y. 30, 7 Am. Rep. 299; Hunt v. Hunt, 72 N. Y. 217, 28 Am. Rep. 129; People v. Baker. 76 N. Y. 78, 32 Am. Rep. 274; O'Dea v. O'Dea, 101 N. Y. 23, 4 N. E. 110. It cannot be doubted, therefore, that the Texas court did not acquire jurisdiction of the defendant in the action by the service of the citation here, or that if the defendant had remained silent, taking no notice of the proceeding, no valid judgment could have been rendered against him. The contract of marriage cannot be annulled by judicial sanction, any more than any other contract inter partes, without jurisdiction of the person of the defendant. The marriage relation is not a res within the state of the party invoking the jurisdiction of a court to dissolve it, so as to authorize the court to bind the absent party, a citizen of another jurisdiction, by substituted service or actual notice of the proceedings given without the jurisdiction of the court where the proceeding is pending. Folger, J., Hunt v. Hunt, supra; Cheever v. Wilson, 9 Wall. 108, 19 L. Ed. 604; O'Dea v. O'Dea, supra."

In Lynde v. Lynde, 162 N. Y. 405, 56 N. E. 979, 48 L. R. A. 679, Gray, J., said (page 412, 162 N. Y., page 981, 56 N. E., and page 682, 48 L. R. A.):

"That the decree of divorce was of no force as to him [the husband, residing and served in this state] cannot be disputed. It is quite settled at the present day that no state can exercise jurisdiction and authority over persons or property without its territory. Its laws and the judgments of its tribunals can have no extraterritorial operation, except so far as the former may be allowed such by comity. The decree of divorce which the plaintiff obtained in New Jersey was effectual to determine her status as a citizen of that state towards the defendant; but as to him it effected nothing and was void, for want of personal service of process, or of an appearance by him in the divorce proceedings. One or the other of these conditions was required to be shown to enable the court to proceed with jurisdiction in personam. As the service of process was constructive, by publication, however authorized by the laws of the state, it was ineffectual against the defendant for any purpose. People v. Baker, 76 N. Y. 78, 32 Am. Rep. 274; In re Kimball, 155 N. Y. 62, 49 N. E. 331; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Story, Confl. Laws, § 539."

In Winston v. Winston, supra, the wife, who was separated from her husband under an agreement authorizing her "to reside from time to time in such place and places as she might think proper," obtained a divorce in Oklahoma, and remarried in this state. In an

action by the husband here for a divorce because of her adultery, the rule of the foregoing cases was reiterated. The court said (page 555, 165 N. Y., and page 273, 59 N. E.):

"The evidence showed the Oklahoma decree of divorce, relied upon by the defendant, to have been invalid, because obtained without personal service of process upon this plaintiff, the defendant therein. The offense charged by the complaint against the defendant had consisted in the latter's marriage, after the Oklahoma decree, with the co-respondent named, and the question was whether the relation thus established was lawful in its nature or meretricious. That a judgment rendered upon the constructive service of process is without force against the personal status of a nonresident and nonappearing defendant has been frequently the subject of judicial discussion, and that the divorce decree in question was without jurisdiction as to this plaintiff, always a resident of this state, cannot be questioned, under the authorities. Lynde v. Lynde, 162 N. Y. 405, 412, 56 N. E. 979, 48 L. R. A. 679; Atherton v. Atherton, 155 N. Y. 129, 49 N. E. 933, 40 L. R. A. 291; O'Dea v. O'Dea, 101 N. Y. 23, 4 N. E. 110; People v. Baker, 76 N. Y. 78, 32 Am. Rep. 274."

It is quite apparent from these cases, and many others which might be cited, that the theory upon which they are based is that the matrimonial relation is not a res within the jurisdiction of a sister state, under the circumstances accompanying the plaintiff's residence in Massachusetts; that a valid decree terminating the relationship as against a citizen of this state requires a voluntary appearance, or such service of process as would be valid in actions in personam; that whatever effect is to be given the decree must be confined to the plaintiff, and to the state in which it was granted; and that in this state it is without binding force or efficacy in any respect, for any purpose, and as to either party.

The defendants claim that In re Morrisson, 52 Hun, 102, 5 N. Y. Supp. 90, is an authority in favor of their contention. That case was decided by the general term in the First department in March, 1889, and affirmed by the court of appeals, without opinion, in 117 N. Y. 638, 22 N. E. 1130. It decided that a decree of divorce was valid in this state which was procured in another state by service by publication upon the wife residing here, where the ground of the divorce was adultery committed by the wife in the state where the divorce was procured. The parties were married and resided together in that state, and the husband, the plaintiff, remained domiciled there. The case arose upon proceedings in surrogate's court instituted by the legal representatives of the husband, deceased, to procure the personal assets of the deceased wife. The court held that inasmuch as the divorce was obtained in the state of the plaintiff's domicile for a cause arising there, and which would have been sufficient in this state, it was entitled to full faith and credit in this jurisdiction. The court further held that the claimants occupied the same position that the husband would have done if living, and that he could not be heard to question the jurisdiction of a court, which he had himself invoked. As to the latter proposition, I cannot regard the case as binding authority. If, as the court decided, the decree, having been rendered where the plaintiff was always domiciled, and being for adultery, was good and effectual in this state, the question of jurisdiction was not involved. Moreover,

the case of Hewitt v. Northrup, 75 N. Y. 506, which is cited in support of the proposition referred to, merely holds that plaintiffs who have gone into a court and invoked its jurisdiction cannot afterwards be permitted to complain that the court determined all the questions needful for a proper disposition of the case. The affirmance of the Morrison Case by the court of appeals may have been upon the main question considered and discussed, viz. that the decree did not offend the policy of this state, inasmuch as the divorce was granted upon grounds recognized as sufficient in this state, or it may have been because the wife was held, in law, to be domiciled with her husband, as in Hunt v. Hunt, 72 N. Y. 217, 28 Am. Rep. 129. Or it may have been because both parties to the decree had died without assailing it, or because, as is alleged it was admitted in evidence without objection. It cannot be said, strictly speaking, that the plaintiff in this action assails the jurisdiction of the Massachusetts court. The decree which she has obtained is offered in evidence against her for the purpose of barring her claim of dower. She objects that the decree is insufficient to accomplish that purpose, not because the court had no jurisdiction to grant it, but because the jurisdiction of the court is limited by the decisions of this state to its own confines, and does not embrace the territory where the real estate in question is located, or the court in which she is now seeking to assert her property rights. The objection is not to the fact of jurisdiction, but rather, to its scope and extent. She does not attack the validity of the decree which she has obtained, but, when it is offered to defeat her claim, she merely asserts the limits of its validity in the jurisdiction now invoked, and within the territory of her present residence.

The case of Todd v. Kerr, 42 Barb. 317, decided by the general term in this department in May, 1864, is precisely in point. That was an action for dower. The plaintiff resided with her husband in Brooklyn, but left him and went to New Jersey to live. While there she procured the passage of an act of the legislature granting her a divorce. Subsequently to that act her husband acquired real estate in New York, and died in 1862. Her action for dower was defended by the husband's heirs, but the court unanimously held that she was entitled. The court said (page 319):

"If it [the act of the legislature] left the husband's marital rights unimpaired, so it did the wife's rights to the property of her husband if she survived him. It is said, however, that she is estopped from denying the force and efficiency of the legislative divorce. I do not see the elements of an estoppel in the transaction."

But it is said that an element of estoppel exists in this case because the plaintiff's husband, by remarrying, acted upon the decree which she procured. He did not marry, however, in this state; and such marriage, had it occurred here, would have been bigamous, beyond all question, under the decision in People v. Baker, supra. I know of no case where it has been held that the act of one party can operate as an estoppel to the prejudice of another in a jurisdiction where such act would constitute a felony, and I should hesitate to import into our adjudications a doctrine which might involve

in its logical result the conferring of a benefit for the commission of a crime. Nor do I think the deduction which invokes the theory of estoppel is fairly deducible from Mr. Starbuck's act, viz. that he acted on the assumption that the plaintiff's decree was valid. It is at least equally reasonable to assume that in remarrying in another state he recognized the fact that the plaintiff's divorce was invalid in this state, and that here she still remained his lawful wife. Of course, there cannot be estoppel of record in this case, inasmuch as the prohibition is not reciprocal. If one party is not bound by the adjudication, the other is not. Shipman v. Rollins, 98 N. Y. 311, 330; Pfeffer v. Kling, 58 App. Div. 179, 68 N. Y. Supp. 641.

Holmes v. Holmes, 4 Lans. 388, decided by the general term in the Third department in December, 1871, enforced the same rule as Todd v. Kerr, supra, viz. that the party obtaining an invalid decree of divorce is not estopped from calling it in question. The court said (page 392):

"That the plaintiff is not estopped from denying the validity of the divorce obtained by him will be seen when it is considered that, if it did not in fact dissolve the marriage, the courts will not allow either party to deny the existence of the marriage. The parties have no power, 'of themselves, either in form or effect, to dissolve the marriage contract, as would be done if effect should be given to the estoppel claimed in behalf of the defendant."

To the same effect is Rigney v. Rigney, 127 N. Y. 408, 416, 28 N. E. 405, reversed on another point, as Laing v. Rigney, 160 U. S. 531, 16 Sup. Ct. 366, 40 L. Ed. 525. See, also, Moe v. Moe, 2 Thomp. & C. 647; People v. Smith, 13 Hun, 414; Rundle v. Van Inwegan, 9 Civ. Proc. R. 328. The latter case contains a clear and convincing opinion on the question, in an action for dower, written by Mr. Justice Charles F. Brown, in which it is held that a wife is not estopped from denying the validity of a foreign divorce by her acquiescence therein and subsequent remarriage.

But, even if the divorce procured by the plaintiff in Massachusetts were binding upon her in this state, it is very doubtful whether it could be permitted to operate to bar her dower, any more than would a valid limited divorce procured by her in this state for the same cause. Analogy to the laws and policy of the state would only require that it should be regarded as a judicial separation, leaving intact such property rights as depend upon and attach to coverture. As was said by the court in Rundle v. Van Inwegan, 9 Civ. Proc. R., at page 336:

"It is settled by numerous authorities in this state that adultery on the part of the wife will not bar her dower in her husband's estate unless she be convicted of that offense by a decree of the court."

If this be so, how can a decree granted in another state for the husband's misconduct have that effect? Our statute provides (1 Rev. St. p. 741, § 8) that "in case of divorce dissolving the marriage contract for the misconduct of the wife she shall not be endowed." In Van Cleaf v. Burns, 118 N. Y. 549, 23 N. E. 881, it was held that the word "misconduct" refers not to any act which may be termed misconduct or converted into a cause of action by the legislature of another state, but only to that kind of misconduct which our laws

recognize as sufficient to authorize a divorce (that is, adultery); and the general principle was asserted (citing the headnote) that:

"A decree dissolving a marriage for a cause not regarded as adequate by the laws of this state, rendered in another state by a court having jurisdiction of the subject and the parties, in an action brought by the husband, will not deprive the wife of her then existing dower rights in lands in this state; at least, in the absence of evidence that, under the laws of the state where it was rendered, it has that effect."

On a second trial and appeal the court held (Van Cleaf v. Burns, 133 N. Y. 540, 30 N. E. 661, 15 L. R. A. 542) that the effect which a judgment of divorce granted in another state has upon the lands of the husband in this state is to be determined, not by its laws, but by the laws of this state; that a wife in this state could only be deprived of dower by a divorce granted for her adultery; and that where, therefore, a husband obtained a valid and binding decree of divorce in another state on the ground of his wife's abandonment of him, the wife was not deprived of her then existing dower rights in the lands of her husband in this state, notwithstanding the effect of the decree under the statutes of the state where it was rendered was to deprive her of dower. The court said (page 543, 133 N. Y., page 662, 30 N. E., and page 544, 15 L. R. A.):

"Under what circumstances an interest in land within this state shall be allowed a wife by way of dower is a question of policy which the state alone has power to decide, and no judgment of a foreign tribunal in and of itself can in any wise affect that question."

It would seem to follow from these decisions that the dower right of a married woman in this state can only be forfeited by a decree, whether of this state or of a foreign jurisdiction, which has been granted because of her adultery. Although the case last cited related to dower in lands owned by the husband at the time of the divorce, a strong argument may easily be made in support of the doctrine that the principle should apply equally to lands subsequently acquired; for, as a limited divorce procured by the wife in this state for cruelty would not deprive her of dower in lands subsequently owned or acquired by her husband, an intelligent and consistent judicial policy would dictate that the judgment of a foreign tribunal for the same cause should have no greater effect or power in that regard, whatever the scope of the judgment may purport to be with respect to a dissolution of the marriage relation, or whatever may be the foreign law under which it was rendered. This, at least, would seem to be a legitimate deduction from the principle and logic of the decisions cited. It is true that by our statute the provision for dower relates to the lands whereof the husband is seised of an estate of inheritance at any time during the marriage. But under the decisions in the Van Cleaf Cases, supra, it is seen that, after a valid decree of divorce in a sister state, the legally divorced wife becomes the widow of the legally divorced husband at the time of his death, so as to be entitled to dower in his real estate owned at the time of the procurement of the valid divorce; and it is not readily seen why, being his widow then for the purpose of dower, that widowhood should be limited in its ap-

plication to a part only of the real estate of which he died seised. If there is a distinction, accuracy and certainty in real-estate titles require that it should be pointed out by a court which can speak with the force and finality of ultimate authority. It will be unnecessary to determine the question in this case, however, if the divorce is held to be operative in this state. And, even if it be held otherwise, it is quite apparent that the plaintiff, if endowed, will receive nothing to which she would not have been entitled had she sued in New York instead of Massachusetts, and recovered here a judgment for such a divorce as can be obtained for cruelty. In this connection, it is noteworthy that the legislature of this state has made provision by section 186 of the real property law (chapter 547, Laws 1896) by which divorced women may release their right of dower in lands after-acquired by their former husbands. It provides for the release, by an instrument in writing sufficient to pass title to real estate, by a woman who is divorced from her husband, whether such divorce be absolute or limited, or granted in his or her favor, of her inchoate right to dower to him in all the real estate, general or specific, theretofore owned by him, and also such as he shall thereafter acquire. This section is a substitute for the provisions, similar in nature, of chapter 616 of the Laws of 1892. Such an enabling act was thought to be necessary in order to prevent the attachment of dower to lands purchased by the divorced husband after the divorce, irrespective of the provisions of the judgment for the wife's support, and adds legislative expression to the cases cited, which hold that under certain circumstances therein detailed, and especially where the marriage relation is not dissolved by the divorce, dower attaches to property subsequently acquired.

It follows from the views herein expressed that the plaintiff's right of dower could only be destroyed by voluntary release, or by a decree of divorce granted because of her adultery; that the decree which she procured in Massachusetts because of her husband's cruelty could not and did not affect her marital status in this state; and that, such decree being ineffectual to dissolve the marriage relation in this state, she is entitled to dower in all the real estate of which her husband died seised.

A question is raised with respect to certain pieces of property which were conveyed to the defendant Herbert B. Turner, and which the latter, by written instruments duly executed and acknowledged, certified and declared that he held in trust for the benefit of William H. Starbuck, his heirs and assigns. The defendants claim that these parcels are to be regarded as free from the claim of dower, on the authority of Phelps v. Phelps, 143 N. Y. 197, 38 N. E. 280, 25 L. R. A. 625. That was the case, however, of lands paid for by the husband, but deeded to a third person, neither conveyed nor agreed to be conveyed to the husband. Under a written agreement between the grantee and the husband, it was agreed that the latter "should receive all the benefit of and have control of said property." The court held that the husband had no estate in the land itself, and only a right of action for damages in the case of a breach of the contract. The later case, however, of Wendt v. Walsh,

71 N.Y.S.—8

164 N. Y. 154, 58 N. E. 2, seems controlling. There the grantee in a deed of absolute conveyance of real property executed a declaration of trust in favor of a third person, his heirs, administrators, and assigns, and it was held that such grantee took a mere naked trust, which was abolished by the real property law (chapter 547, Laws 1896); that as trustee no legal or equitable estate vested in him, but that the absolute fee of the premises vested in the person in whose favor the trust was declared.

Since the foregoing was written, the case of Atherton v. Atherton, supra, has been reversed by the supreme court of the United States, in 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794. After examining supplementary briefs which the parties have been invited to file in view of that decision, the conclusion to be reached by this court is not changed. In the Atherton Case the parties were both matrimonially domiciled in Kentucky, where they lived together after their marriage at Clinton, N. Y., and where the cause of action, viz. the wife's abandonment of the husband, arose. The divorce was procured for a cause of action and under forms of procedure to which both parties were subjected by the laws of their joint matrimonial domicile and allegiance. The question involved in this case was not under consideration there. Mr. Justice Gray, in reading the prevailing opinion, and after considering the New York authorities in contradistinction to the lax doctrines prevailing elsewhere, said (page 170, 181 U. S., page 550, 21 Sup. Ct., and page 803, 45 L. Ed.):

"The authorities above cited show the wide diversity of opinion existing upon this important subject, and admonish us to confine our decision to the exact case before us. This case does not involve the validity of a divorce granted, on constructive service, by the court of a state in which only one of the parties ever had a domicile, nor the question to what extent the good faith of the domicile may be afterwards inquired into. In this case the divorce in Kentucky was by the court of the state which had always been the undoubted domicile of the husband and wife. The single question to be decided is the validity of that divorce, granted after such notice had been given as was required by the statutes of Kentucky."

In deciding that such a divorce was valid, it would seem that the court only adopted the same view as that which prevailed in our court of appeals in Hunt v. Hunt, supra, and in re Morrisson, supra. It is true that Mr. Justice Gray did say (page 162, 181 U. S., page 547, 21 Sup. Ct., and page 799, 45 L. Ed.), that "the rule as to the notice necessary to give full effect to a decree of divorce is different from that which is required in suits in personam"; and an argument may easily be drawn from that dictum to the effect that the matrimonial alliance may be broken for any cause and by any form of law in a foreign jurisdiction, without regard to the nonconsenting victim beyond the jurisdiction whose rights are thus rudely shattered. But this statement was not necessary to the decision, no authority is cited to support it, and it cannot be told whether or not it received the concurrence of a majority of the court. If it were certain that that view would prevail, it would still be the duty of this court to follow the decisions of this state until they should be reversed. The subject is a vexed one, at best.

and to attempt to reconcile all the decisions on the question of divorce would tax alike the ingenuity of the writer and the flexibility of the language. By the federal constitution, full faith and credit are to be given in each state to the public acts as well as judgments of every other state. If a married resident of this state, who knows that under its laws the tie cannot be dissolved except for his adultery, can have the union lawfully broken for some other cause by the decree of a foreign state without either his knowledge or assent, it would seem that, in according full faith to the judgment of that state, equal faith would be denied to the public acts of this state. The attitude of the New York courts is consistent with full credit to every state, within the salutary rules and limitations of authority and jurisdiction. And until the final arbiter, the supreme court of the United States, decides adversely to the New York rulings, the question not determined in the Atherton Case, viz. "the validity of a divorce granted on constructive service by the court of a state in which only one of the parties ever had a domicile," it is the proper province of an intermediate tribunal to adhere to the decisions of the state of its jurisdiction. In the Atherton Case the decision rested upon the fact that the divorce was granted in the state where both parties were domiciled at the time, and to that extent it was clearly in accord with the rule laid down some years ago in this state in Kinnier v. Kinnier, 45 N. Y. 535, 6 Am. Rep. 132, wherein Chief Judge Church said (page 544, 45 N. Y., and page 139, 6 Am. Rep.):

"It is now well settled that the lex loci which is to govern married persons, and by which the contract is to be annulled, is not the law of the place where the contract was made, but where it exists for the time, where the parties have their domicile, and where they are amenable for any violation of their duties in that relation. Story, Confl. Laws, § 230a."

I am also aware that the views herein expressed may conflict to some extent with the recent decision rendered in the Fourth department in Re Swales' Estate, 70 N. Y. Supp. 220. That case, however, did not relate to dower. It was an application by a woman who had procured a foreign divorce, and remarried in this state, to administer on the estate of her first husband. The facts were precisely similar to those existing in Re Kimball, supra, excepting that there the application was to administer on the estate of the second husband. The court of appeals refused the application on the ground that the wife could not maintain the validity of her divorce. The appellate division refused the application upon the ground that she cannot dispute its validity. If both cases could possibly stand, it would seem to follow that during the joint lives of her two husbands she is the wife of neither, and that on the death of both she does not become a widow for the purpose of administration. The results are as incongruous as the theories of the decisions are conflicting. I cannot see, therefore, that this adjudication affords any logical aid to the reaching of a different result from that hereinbefore indicated. On the main question considered, however, viz. whether the foreign divorce determines the marital status of the plaintiff beyond the state where it is granted,

the more recent case of In re Hall (in the Third department) 70 N. Y. Supp. 406, is in accord with what I have said, and in conflict with the reasoning in the Swales Case. Smith, J., said:

"The learned counsel for the respondent relies with assurance upon those decisions of our court of appeals which hold that a divorce in a foreign state, as against a nonresident of that state who is not personally served therein or who did not appear, is ineffectual to effect the status of either party beyond the borders of that state. This proposition is unquestionably held by the cases cited."

The defendants' exceptions must be overruled, and the motion for a new trial denied.

Defendants' exceptions overruled, and motion for new trial denied, with costs. All concur, except GOODRICH, P. J., who dissents, and JENKS, J., not voting.

GOODRICH, P. J. I cannot concur in the affirmance of this judgment. The action sounds in equity. Mr. Pomeroy, in his Equity Jurisprudence (volume 3, §§ 1380–1382), states that originally the wife's right of dower was purely legal, and asserted at law; that in the reign of Queen Elizabeth courts of equity began to assume jurisdiction over cases of dower; that this jurisdiction has been expanded so as to afford complete relief between the parties; that equitable interposition in cases of dower was at first invoked for the removal of impediments in the way of recovery at law; and that it is now well settled that courts of equity have concurrent jurisdiction in cases of legal dower, or dower in legal estates. In the present action, dower is claimed not only in real property which was conveyed to William H. Starbuck in April, 1884, and stood in his name, but also in another piece of property, which in 1881 was conveyed to, and stood in the name of, one Turner, and of which the complaint alleges that Starbuck was in fact owner. It was necessary to bring an action in equity to remove this title impediment in the way of plaintiff's recovery, and she has sought such forum. It is not necessary to cite authority for the principle that he who seeks equity must do equity, and must come into court with clean hands. 1 Story, Eq. Jur. § 64e; Bisp. Eq. §§ 42, 43. "Qui sentit commodum sentire debet et onus." Broom, Lex. Max. 705. The plaintiff invoked the jurisdiction of the superior court of Massachusetts in commencing an action for divorce, and submitted herself to the power of that court. She cannot now, in good conscience, refuse to abide by its decree dissolving the marital bonds. In Hewitt v. Northrup, 75 N. Y. 506, it was said (page 510):

"But the claim is further made that the supreme court is not the court to determine the amount and validity of debts, nor to marshal the assets of a bankrupt, and that the proper parties are not here for that purpose. But the plaintiffs went into that court and invoked its jurisdiction, and brought in just such parties as they deemed proper, and they cannot now complain that the court determined all the questions needful for a proper disposition of the case."

The marriage in question took place in Massachusetts, and there is no evidence tending to show that the plaintiff went there for the purpose of acquiring a domicile in order to bring an action for

divorce. She went there in 1868, and her action for divorce was not commenced until 1874. She obtained her decree, received and accepted whatever benefits accrued therefrom, including the custody of a minor child of the marriage, and from 1874 until the death of William H. Starbuck practically proclaimed that she was no longer his wife. Having accepted the benefits of the decree and acted under it, she cannot be permitted to reject its disabilities and burdens. This principle is so fully established that it is unnecessary to cite authority. I think the plaintiff is estopped to claim a dower right in property acquired by William after the dissolution of the marriage tie between herself and him. He acted upon the faith of the judgment, and contracted a new marriage, not in New York, but in Pennsylvania, so that no prosecution for bigamy, within the principle of People v. Baker, 76 N. Y. 78, 32 Am. Rep. 274, could have been maintained against him in New York. Children have resulted from the marriage, and an affirmance of the judgment would, in effect, declare the new wife to be an adulteress, and the children bastards, and strip them of rights in property acquired by the husband and father after the plaintiff had obtained her decree of divorce, and after the contracting of the new marriage. I cannot assent to any doctrine which would have that result. There is no decision of our court of appeals, so far as I can find, where it has been announced that a plaintiff who has sought and obtained a decree of divorce within the jurisdiction of her domicile can be heard to assert its invalidity for the purpose of claiming dower in the property of her divorced husband, acquired after the decree and a second marriage. There are decisions at special term which sustain the doctrine upon which the prevailing opinion is based. There are also opinions of the same character in the old general term. But there are also opinions in the old general term to the contrary, and, as these are referred to in the opinion of Mr. Justice HIRSCHBERG, I do not refer to them. A recent opinion in the Fourth department (In re Swales, 60 App. Div. 599, 70 N. Y. Supp. 220) contains this significant language (page 603, 60 App. Div., and page 223, 70 N. Y. Supp.):

"Mrs. Swales, in order to obtain an absolute divorce from her husband, elected to go into the state of Illinois, where the rules and regulations respecting such actions are much less rigid than they are in this state. She obtained what she went for, and, reposing upon the regularity and security of her decree, she subsequently married another man, with whom she is still living. Having made this election, and secured to herself all the benefits that were obtainable therefrom, it would seem like a travesty of justice to permit her now to repudiate the same, and, by impeaching the validity of the decree under which she has lived for eighteen years, to administer and appropriate the personal estate of a man from whom for that period of time she had proclaimed to the world that she was absolutely divorced."

People v. Baker, supra, and other like cases, rest upon the principle that, where there is substituted and not personal service upon the defendant within the state, the court acquires no jurisdiction of the defendant, as he has had no opportunity to be heard. But that principle does not affect the plaintiff, who has invoked the jurisdiction, has been heard, and had her status declared.

In Jones v. Jones, 108 N. Y. 415, 15 N. E. 707, there had been an action for divorce in Texas, in which the defendant there appeared at first to object to the jurisdiction, but afterwards appeared generally and defended the action, and prosecuted an appeal from the judgment. The court held (page 427, 108 N. Y., and page 710, 15 N. E.)—

"That the Texas judgment is a valid and binding adjudication. There is no reason to regret this result. The present plaintiff had a full opportunity to be heard and to present his defense in that proceeding, and availed himself of it. He appealed from the judgment, which was affirmed by the highest jurisdiction of the state. The litigation was, we think, conclusively ended by the final decree."

In Rigney v. Rigney, 127 N. Y. 408, 28 N. E. 405, the court said (page 413, 127 N. Y., and page 406, 28 N. E.):

"The courts of the United States and those of most of the several states, including New York and New Jersey, hold a divorce to be valid, so far as it affects the marital status of the plaintiff, which is granted by the courts of a state, pursuant to its statutes, to one of its resident citizens, in an action brought by such citizen against a resident citizen of another state, though the defendant neither appears in the action, nor is served with process in the state wherein the divorce is granted. Cheever v. Wilson, 9 Wall. 108, 19 L. Ed. 604; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; People v. Baker, 76 N. Y. 78, 32 Am. Rep. 274; Doughty v. Doughty, 28 N. J. Eq. 581; Cooley, Const. Lim. 400; 2 Bish. Mar., Div. & Sep. § 150 et seq. But the courts of this and some of the states hold that the marital status of such nonresident defendant is not changed by a judgment so recovered, he or she remaining a married person. People v. Baker, 76 N. Y. 78, 32 Am. Rep. 274; O'Dea v. O'Dea, 101 N. Y. 23, 4 N. E. 110; Jones v. Jones, 108 N. Y. 415, 15 N. E. 707; Cross v. Cross, 108 N. Y. 628, 15 N. E. 333; Cook v. Cook, 56 Wis. 195, 14 N. W. 33, 443, 43 Am. Rep. 706; Doughty v. Doughty, 28 N. J. Eq. 581; Flower v. Flower, 42 N. J. Eq. 152, 7 Atl. 669; 2 Bish. Mar., Div. & Sep. § 153 et seq.; 2 Black, Judgm. § 926."

This decision was reversed by the United States supreme court, sub nomine Laing v. Rigney, 160 U. S. 531, 16 Sup. Ct. 366, 40 L. Ed. 525, but I do not find that the statement of the law in the above quotation was disapproved. Thus we have the declaration of the court of appeals that the marital status of the plaintiff has been changed by the valid decree of the Massachusetts court. As that decree declared her to be no longer the wife of William, it is somewhat difficult to understand how she can have dower in his subsequently acquired real estate. The judgments of divorce under consideration in People v. Baker, supra, and O'Dea v. O'Dea, supra, were obtained previously to 1874, at which time there was no provision in our Code for serving an absent defendant in a divorce action by substituted service. The Code was amended in 1876, so that in a divorce action a nonresident could be served by publication; and this fact was referred to by Judge Folger in his opinion in the Baker Case, 76 N. Y., at page 87, 32 Am. Rep. 274. Both these cases, therefore, were decided at a time when our statutes did not provide for the service by publication of a summons upon a defendant in an action for divorce. Since the amendment which authorized the acquiring of jurisdiction against a nonresident in such an action, it seems unreasonable that, as against the plaintiff, we should refuse to recognize the decree of the court of a sister state,

obtained by the plaintiff in precisely the same manner, and thereby fail to give that full faith and credit to the records and judicial proceedings of every other state which is required by section 1, art. 4, of the federal constitution. These views are sanctioned by Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794, where the court said (page 162, 181 U. S., page 547, 21 Sup. Ct., and page 799, 45 L. Ed.):

"The purpose and effect of a decree of divorce from the bond of matrimony by a court of competent jurisdiction are to change the existing status or domestic relation of husband and wife, and to free them both from the bond. The marriage tie, when thus severed as to one party, ceases to bind either. A husband without a wife, or a wife without a husband, is unknown to the law. When the law provides, in the nature of a penalty, that the guilty party shall not marry again, that party, as well as the other, is still absolutely freed from the bonds of the former marriage."

The court cites, apparently with approval, Ditson v. Ditson, 4 R. I. 87, the leading case in opposition to the People v. Baker doctrine, remarking with regard to it that Judge Cooley, in his treatise on Constitutional Limitations (page 403, note), says that there is no case in the books more full and satisfactory upon the whole subject of jurisdiction in divorce suits. The opinion also refers to People v. Baker, the doctrine of which is apparently disapproved, inasmuch as the supreme court recognizes the binding character of a decree obtained in Kentucky without personal service upon the absent defendant, in accordance with the first section of the fourth article of the constitution of the United States, above referred to. The wide divergence of opinion in the courts of different states upon this important question gives weight to the remark of the court of appeals in People v. Baker, where it was said:

"It remains for the supreme court of the United States, as the final arbiter, to determine how far a judgment rendered in such a case, upon such substituted service of process, shall be operative without the territorial jurisdiction of the tribunal giving it."

It seems to me that the United States supreme court has virtually decided the question adversely to the views expressed in the prevailing opinion, as that court (Atherton Case, 181 U. S. 173, 21 Sup. Ct. 551, 45 L. Ed. 804) said:

"The result is that the courts of New York have not given to the Kentucky decree of divorce the faith and credit which it had by law in Kentucky, and that therefore their judgments must be reversed."

My objections to the conclusions of Mr. Justice HIRSCHBERG are that his opinion fails to regard the equities of the situation; that it makes no distinction between the rights of a plaintiff who has invoked the jurisdiction of a court, and those of a defendant who, though he may have been summoned according to the law of the jurisdiction, has not appeared in the action; that it fails to give effect to the doctrine declared in Rigney v. Rigney, supra, that the plaintiff's marital status is fixed by the Massachusetts decree; that it disregards the principle that one who has accepted the benefits of one part of a decree cannot reject the burdens imposed by it; and that full faith and credit are not accorded to the judgment of the superior court of Massachusetts.