(38 Misc. Rep. 196.)

### LACEY v. LACEY.

(Supreme Court, Special Term, New York County. June, 1902.)

1. DIVORCE—SERVICE BY PUBLICATION—VALIDITY.
    Plaintiff had obtained a divorce for abandonment in a foreign state, after a domicile of 4½ years in such state with her husband, on service by publication only. At that time he had left her, and was alternately in the state of New York and in Pennsylvania, but without any intention of making New York his permanent domicile. *Held*, that the divorce was valid as to the parties, and conclusive, under Const. U. S. art. 4, § 1, and precluded the wife from maintaining a subsequent action against her husband on the ground that after she had divorced him he had married again.

2. ESTOPPEL.
    Where a wife invoked the jurisdiction of the court of another state, and induced it to grant her a divorce, she could not afterwards allege its nullity.

Action by Harriet Lacey against Frederick F. Lacey for divorce. Judgment for defendant.

Charles L. Hoffman, for plaintiff.

Howe & Hummel, for defendant.

LEVENTRITT, J. This is an action for divorce. The defense is that the alleged act of adultery was not meretricious, in that the plaintiff had theretofore procured a decree of divorce against the defendant, pursuant to which he had legally married the alleged co-respondent. The plaintiff claims that this decree is void and of no effect. The parties were married at the city of Omaha, in the state of Nebraska, on the 23d day of September, 1884, and they moved to Tacoma, in the state of Washington, in the month of May, 1888, and adopted that place as their residence. Tacoma continued to be the place of their matrimonial and only domicile for more than 4½ years. Then, on or about December 11, 1892, the defendant left Tacoma for reasons variously stated in the testimony of the respective parties. The plaintiff says the defendant left to avoid the importunities of creditors. He asserts that he went to Central America on account of ill health. There is no evidence of marital infelicity or difficulties inducing his departure, and there is absolutely no evidence in the case which would justify any finding of desertion or abandonment at that specific time. While it is probably true that the defendant left Tacoma more on account of credit-

ors than ill health, it is equally true that his leaving did not constitute an abandonment of domicile, matrimonial or otherwise. In a letter written within three weeks after his departure, he refers to returning to Tacoma; and in another, written within a few months, he writes to his wife that he hopes they will be "together soon." It appears that for some years he was expecting to return to Tacoma, awaiting the opportunity of securing a good position. Beyond the fact that there was no relinquishment of domicile in December, 1892, or for some time thereafter, the important fact to be emphasized is that at no time during the period of the pendency of the divorce proceedings instituted in the state of Washington by the wife, from issuance of summons to granting of decree, had the defendant acquired a domicile in the state of New York animo et facto. Before taking up the consideration of the effect of the decree granted to the plaintiff in the superior court in the state of Washington on the 31st day of July, 1894, it will be well briefly to trace the defendant's movements with reference to the acquisition of a New York domicile. The defendant testified that he resided in Tacoma from the 23d day of May, 1888, until the 12th day of December, 1892. Thence he went to Managua, in Central America, remaining there until April, 1893, when he came to New York "temporarily," as he testifies. At the end of 10 days he left for Chicago, accepted a position as hotel clerk, and remained in that city until November 1, 1893. Then he came again to New York; remained here for four or five weeks looking for employment; then went to the home of his mother at Battle Creek, Mich. Throughout this time he had formed no intention of locating anywhere permanently. In March, 1894, he returned to the city of New York, stopping a few days, then spent two months in the cities of Troy and Albany, and was in New York again in May, 1894. From May, 1894, to January or February, 1895, he was alternately in New York and Philadelphia. This testimony appears in the record: "By the court: Q. So you had not adopted New York as your permanent residence up to 1895? A. Not up to that time; no. Q. You had not made up your mind to become a resident of the state of New York up to 1895? A. I had not; no, sir." It also appears that some time between 1895 and 1897 the defendant became a domiciled resident of this state, that he cast his first vote here in 1897, and that he has since continued to have his domicile here. In 1895 he still had an intention of returning to Tacoma. It was not until the fall of the year 1894— several months after the plaintiff had obtained her decree—that the defendant first heard of the divorce proceedings instituted against him. He acquiesced therein, and on the 23d day of February, 1901, he married the lady named as co-respondent in this action. The plaintiff's divorce proceedings are not attacked for any irregularity or noncompliance with the law and statutes of the state of Washington. In fact, it is conceded that they were regular so far as that state is concerned, the plaintiff's position being that under the law of this state they are all without effect.

It appears from the certified record of the proceedings in the Washington court, admitted in evidence pursuant to a stipulation that it

should have the same force and effect as if an exemplified copy, that the plaintiff filed her complaint in the superior court of Pierce county, state of Washington, on the 15th day of May, 1894, praying for a divorce on the ground of willful abandonment and desertion, and alleging, among other formal matters, that the plaintiff then was, and had been for more than a year, a resident of the city of Tacoma. The complaint stated a cause of action under the Code and Statutes of Washington. Ballinger's Ann. Codes & St. §§ 5716, 5718. Return being made by the sheriff of Pierce county that after due and diligent search he had been unable to find the defendant in that county, and due affidavit having been made as provided for by section 4897, the summons was duly served by publication pursuant to section 4878. The first publication was made on May 19, 1894, the last publication on June 23, 1894, and the defendant's time to answer expired 20 days thereafter, to wit, on July 13, 1894. On July 31st, upon due proof to the court, and after hearing had, a decree was entered, the essential part of which reads:

"It is ordered, adjudged, and decreed that said marriage between the plaintiff, Harriet R. Lacey, and the defendant, Fred. F. Lacey, be, and the same is hereby, dissolved and annulled, and said plaintiff is freed and absolutely released from the bonds of matrimony, and all obligations thereof. Both parties are prohibited from intermarrying with third parties within six months from this date."

Without citing the Washington statutes and laws at greater length, it may be stated generally, what is in fact conceded by the parties to this action, that the decree granted is perfectly valid and enforceable in the state of Washington. The contention of the plaintiff is that this decree has absolutely no extraterritorial force, and that in this state it is without efficacy as to either party in any respect and for any purpose. I am unable to agree with this contention. In the lamentable state of conflict which exists in the divorce laws and decisions in the various states and the various courts, and in the absence of that consummation, much to be wished, a unifying, clarifying, national divorce law, we must follow the decisions of our own court, except in so far as a different command is laid upon us by the pronouncements of the supreme court of the United States. The plaintiff relies on two cases: People v. Baker, 76 N. Y. 78, 32 Am. Rep. 274, and Starbuck v. Starbuck, 62 App. Div. 437, 71 N. Y. Supp. 104. The former is the leading case on the subject in this state, and the latter the most recent statement of the rule. Between these two there is a considerable line of cases variously stating the same principle. O'Dea v. O'Dea, 101 N. Y. 23, 4 N. E. 110; De Meli v. De Meli, 120 N. Y. 485, 24 N. E. 996, 17 Am. St. Rep. 652; In re Kimball, 155 N. Y. 62, 49 N. E. 331; Atherton v. Atherton, 155 N. Y. 129, 49 N. E. 933, 40 L. R. A. 291, 63 Am. St. Rep. 650, reversed in 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794; Winston v. Winston, 165 N. Y. 553, 59 N. E. 273. As Mr. Justice Hirschberg says in the Starbuck Case:

"They all adhere to the general principle enunciated in the Baker Case 'that a state may adjudge the status of its citizen towards a nonresident, and may authorize to that end such judicial proceedings as it sees fit, and that other states must acquiesce, so long as the operation of the judgment is

kept within its own confines. But that judgment cannot push its effect over the borders of another state to the subversion of its laws and the defeat of its policy, nor seek across its bounds the person of one of its citizens, and fix upon him a status against his will, and without his consent, and in hostility to the laws of the sovereignty of his allegiance.'"

In the Baker Case the precise question which the court propounded is stated at the very outset of the case in this language:

"Can a court in another state adjudge to be dissolved and at an end the matrimonial relation of a citizen of this state, domiciled and actually abiding here throughout the pendency of the judicial proceedings there, without a voluntary appearance by him therein, and with no actual notice to him thereof, and without personal service of process on him in that state?"

The court answered the question as given in the quotation from the Starbuck Case. In the Starbuck Case, it is said: "A valid decree terminating the relationship as against a citizen of this state requires a voluntary appearance or such service of process as would be valid in actions in personam." Page 444, 62 App. Div., and page 109, 71 N. Y. Supp. In both cases service on the defendant was effected by publication.

In Re Kimball, supra, a Dakota divorce was held invalid as against a citizen of this state, resident here during the pendency of the divorce proceedings. In Jones v. Jones, 108 N. Y. 415, 15 N. E. 707, 2 Am. St. Rep. 447, the defendant was similarly a resident and citizen of New York. So in O'Dea v. O'Dea, supra. In Lynde v. Lynde, 162 N. Y. 405, 56 N. E. 979, 48 L. R. A. 679, 76 Am. St. Rep. 332, the husband resided in this state, and the court held that the decree was of no force as to him. In Winston v. Winston, supra, it was held:

"That a judgment rendered upon the constructive service of process is without force against the personal status of a nonresident and nonappearing defendant has been frequently the subject of judicial discussion, and that the divorce decree in question was without jurisdiction as to this plaintiff, always a resident of this state, cannot be questioned under the authorities." Page 555, 165 N. Y., and page 273, 59 N. E.

Other cases to the same effect might be cited. All are based on the rule given in People v. Baker, and in all there was residence—domicile—in this state during the pendency of the divorce proceedings. In this case there has been neither. There was on the part of the defendant mere cursory temporary sojourn at various times in this state, and no settled purpose, until after the entry of the decree in the Washington court, either to reside or acquire a domicile here. Our court of appeals has not suffered the status of a resident or citizen of this state, one owing allegiance to it and to which it owes the protection of its laws and sovereignty, to be changed by a decree of divorce secured in another state upon service other than personal within the borders of that state.

I do not regard myself concluded, however, by any decision in this state from giving extraterritorial force to such a decree where the party brought into the foreign jurisdiction by substituted service was not domiciled and not a resident within this state. There is in such case no occasion for any jurisdictional inquiry beyond that whether the foreign court had, according to its laws, jurisdiction of

the person and subject-matter. In this case it appears there was jurisdiction according to the law and practice of the state of Washington, that the procedure was valid and regular according to the law of that state, and therefore the provision of the constitution of the United States to the effect that full faith and credit be given in each state to the public acts, records, and judicial proceedings of every other state requires recognition, and is binding, certainly so far as the plaintiff is concerned, in the courts of this state. Const. art. 4, § 1; Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794. The case last cited, while not precisely in point on the facts, is yet an authority for denying the plaintiff any relief. There the husband and wife had their matrimonial domicile in the state of Kentucky. The wife left him, returning to the state of New York, where she was living throughout the pendency of the divorce proceedings. The husband sued for divorce on the ground of abandonment in the state of Kentucky, proceeding according to the laws of that state. Substituted service was made on the wife, who never appeared in the action. After due proceedings and proof a decree was granted the husband. The New York court of appeals, following People v. Baker, supra, held the decree to be no bar to the wife's petition for divorce, supra, but the supreme court of the United States held that the divorce in Kentucky, which had been the only matrimonial domicile of the husband and wife, and always the undoubted domicile of the husband, and which had been granted after such notice as was required by the statutes of Kentucky, was conclusive on the courts of New York under the constitutional provision cited.

In this case it sufficiently appears from the outline of facts given that the wife had her domicile for all purposes, matrimonial as well as otherwise, in the state of Washington throughout the divorce proceedings there, and that the husband, with his avowed object of returning to Tacoma, likewise had his domicile there, whatever his temporary place of sojourn may have been; for under the law everybody must have a domicile somewhere, and there is no evidence of abandonment or of acquisition of domicile on his part in another jurisdiction. In any event, the wife had such a domicile as entitled her to invoke the jurisdiction of the Washington court, and, this domicile being bona fide, we are not permitted, under the Atherton Case, to question the decree. It is significant to note in this connection that People v. Baker, which is relied on to support the contrary contention, is impliedly disapproved in the Atherton Case, and that the leading authority in conflict with the views there expressed (Ditson v. Ditson, 4 R. I. 87) is quoted with approval and followed at pages 160, 167, 181 U. S., page 548, 21 Sup. Ct., and page 794, 45 L. Ed.

In addition to the views already expressed there are two further grounds, either of which, I think, compels a denial of any relief to the plaintiff. In the first place, she invoked the jurisdiction of the Washington court, and in all equity and good conscience she should not be permitted to attack the authority of the decree which her own acts induced the court to grant her. In re Morrisson, 52 Hun,

102, 5 N. Y. Supp. 90, affirmed without opinion in Re Morrison, 117 N. Y. 638, 22 N. E. 1130; Hewitt v. Northrup, 75 N. Y. 510; In re Swales' Estate, 60 App. Div. 599, 70 N. Y. Supp. 220. In Re Morrisson, supra, affirmed in the court of appeals, Van Brunt, P. J., says:

"There is another suggestion, and that is that Henry Feyh, having invoked the jurisdiction of the court of Ohio, and submitted himself thereto, cannot now be heard to question such jurisdiction. * * * This position does not rest upon the doctrine of estoppel, as such term is ordinarily used, but upon a principle which has been repeatedly recognized by the courts,—that where a party has gone into a court and invoked its jurisdiction he cannot subsequently attack the decree of the court, obtained at his instance, because of the want of jurisdiction of somebody else. In the case of Hewitt v. Northrup, 75 N. Y. 510, this principle is clearly recognized. In the case at bar, therefore, Henry Feyh cannot be heard to claim the nullity of this decree, he having invoked the jurisdiction of the court, and asked its rendition." Page 108, 52 Hun, and page 93, 5 N. Y. Supp.

In Re Swales' Estate, 60 App. Div. 599, 70 N. Y. Supp. 220, the appellate division for the Fourth department said:

"It is made to appear beyond all controversy that the respondent did invoke the jurisdiction of the court of a sister state to free herself from all marital relations with the decedent. * * * Now, while it probably would not be technically correct to assert that any or all of the respondent's acts constituted an estoppel within the ordinary acceptation of that term, for the reason that they were not designed to and did not influence the decedent to do anything which he would not otherwise have done, * * * yet we think the case justifies the application of a somewhat similar principle, which is that where a party has invoked the jurisdiction of any court, and submitted himself thereto, he cannot thereafter be heard to question such jurisdiction."

Finally, there is another principle directly deducible, I think, even from the extreme cases in this state, which may be invoked. It is this: People v. Baker and allied cases hold that, where there has been substituted service, it is ineffectual against the defendant for any purpose. At the same time it is conceded that the marital status of the plaintiff has been changed. While it has been argued (Starbuck v. Starbuck, supra) that this change operates only within the confines of the state where consummated, and is inoperative beyond, I am of the opinion that, if changed at all, the marital status of the plaintiff is changed not merely for one state, but for all. Rigney v. Rigney, 127 N. Y. 408, 28 N. E. 405, 24 Am. St. Rep. 462, reversed on other points sub nom. Laing v. Rigney, 160 U. S. 531, 16 Sup. Ct. 366, 40 L. Ed. 525; People v. Baker, supra. The plaintiff in this action has had her marriage status declared, and she cannot disavow it here. That the resulting anomaly under New York decisions of a wife without a husband, while the husband still retains his wife, will not be sustained in the court of final appeal, is foreshadowed in the Atherton Case, where the court say, "The marriage tie, when thus severed as to one party, ceases to bind either." Page 162, 181 U. S., page 547, 21 Sup. Ct., and page 794, 45 L. Ed. Be that as it may, the point made here is that our own decisions, recognizing that the foreign divorce establishes the marital status of the one invoking the jurisdiction of the court, require as logical corollary the acceptance of that status in all courts where the party

who secured the determination brings an action for divorce which her initiative secured. In support of my view, I would further refer to the dissenting opinion of Mr. Justice Goodrich in Starbuck v. Starbuck, with whose reasoning I find myself in accord. Judgment must be for the defendant.

Judgment for defendant.