Callahan, J.
The parties to this action were married on October 28,1925, in the State of New York, where they continued to reside until the time of their separation in the early part of 1944. In that year plaintiff brought an action in the Supreme Court, New York County, for a legal separation alleging cruelty on the part of defendant, who appeared in the action and counterclaimed for separation on the ground of plaintiff’s cruelty. The action resulted in judgment in favor of plaintiff and dismissal of the counterclaim. The decree of separation awarded custody of the two children of the marriage to plaintiff and made provision for support and maintenance of the wife and children. Defendant was duly served with a copy of that judgment in this State.
Defendant thereafter fell in arrears on payment of alimony to the extent of $2,500. This led to a motion to punish for contempt on the basis of such nonpayment. While the contempt proceedings were pending, a copy of a summons and complaint in an action for absolute divorce brought by defendant in the courts of Nevada was delivered to plaintiff in this State. Plaintiff with her children at all times continued to reside in New York State and at no time within the State of Nevada. The complaint in the Nevada action alleges, as grounds for the divorce, abandonment for more than three years without cohabitation and mental cruelty on the part of the wife since the inception of the marriage.
Plaintiff then instituted the present action for injunctive relief to restrain defendant from prosecuting his suit for divorce in the courts of Nevada. Defendant was personally served in this State with a copy of the summons and complaint in the injunction action. Plaintiff alleges that defendant resides and has always resided in the State of New York, that his present residence in the borough of Manhattan is listed in the telephone directory at an apartment occupied under lease, and that he has continuously operated a business and maintains a personal banking account in the city of New York. Plaintiff asserts that defendant went to Las Vegas, Nevada, not to establish a residence or domicile, but solely for the purpose of pro *284 curing a divorce. It is further claimed that defendant visited in New York on certain specified dates, by reason whereof plaintiff believes that defendant did not remain in the State of Nevada for the period of six weeks required in that State to establish residence as a basis for domicile and that in any event his assertion of bona fide domicile in the foreign jurisdiction is a pretense and sham.
Plaintiff moved for a temporary injunction in this action, claiming that defendant had resorted to a foreign court in an endeavor to circumvent the judgment of separation obtained in this State and render such judgment ineffective and valueless. Without injunctive relief pendente lite plaintiff says that she would be compelled to sustain her property rights secured by the New York judgment before the courts of Nevada. It appears that plaintiff in this case has only thirty days to answer the complaint in the Nevada action instituted by her husband and that an order restraining its prosecution is necessary to prevent a palpable default on her part in pleading to the foreign suit. Plaintiff’s motion, however, was denied on the ground that no need for a temporary injunction exists. The Special Term held that such relief is unnecessary if defendant has failed to acquire a bona fide residence in the foreign State, and that relief of this nature may not be granted where such residence has been established by the divorcing spouse.
The motion for a temporary injunction ivas opposed solely on the basis of an affidavit by defendant’s attorney. There was no attempt to controvert any of the facts alleged by plaintiff regarding defendant’s lack of domicile in Nevada. Defendant merely stands on the legal proposition that a foreign decree of divorce will not be recognized in this State and no harm or injury can result to plaintiff from such a decree, if her contention as to the sham character of defendant’s residence in Nevada has merit and can be established. For this position defendant relies upon Goldstein v. Goldstein (283 N. Y. 146) as authority for the denial of injunctive relief to plaintiff as unnecessary under the circumstances of this case.
Plaintiff contends that since the Goldstein decision rested at least in part on the former holding of the Supreme Court of the-United States in Haddock v. Haddock (201 U. S. 562) expressly overruled in Williams v. North Carolina (317 U. S. 287, 303), the authority of the Goldstein case as a binding precedent has been destroyed. We are aware of numerous rulings to this effect at Special Term in this and other departments of the Supreme Court of this State. (See Oltarsh v. Oltarsh, 181 *285 Misc. 255; Adams v. Adams, 180 Misc. 578; Allan v. Allan, 63 N. Y. S. 2d 924 [not officially reported]; Maloney v. Maloney, 51 N. Y. S. 2d 4 [not officially reported]; Ciacco v. Ciacco, 50 N. Y. S. 2d 398 [not officially reported].) Likewise, in Palmer v. Palmer (268 App. Div. 1010 [3d Dept.]) the Goldstein case was evidently not regarded as an impediment to an injunction under somewhat similar circumstances. In the Palmer case it appears that the plaintiff had brought an action for separation in the courts of this State before the defendant had instituted a divorce action on his own behalf in the courts of a sister State. The prosecution of the foreign suit was enjoined upon the theory that the plaintiff’s rights in the separation action would be impaired by the proceedings in the foreign jurisdiction. More recently in Sullivan v. Sullivan (271 App. Div. 1016 [2d Dept.]) it seems to be suggested that a reappraisal of the general situation under the Goldstein rule may be appropriate in the light of considerations growing out of recent decisions relating to foreign decrees and the effect thereof “ requiring greater solicitude for the protection of marital rights of citizens of New York.”
The facts in the Goldstein case, where the husband resorted to the courts of Florida for a divorce, are quite similar to those involved in this action. The law, however, has undergone a radical change since the time of decision in that case. There the Court of Appeals said (283 N. Y. 146, 148-149): “On these facts the courts of the State of Florida are wholly without jurisdiction to render a valid divorce against the plaintiff. Florida is not their matrimonial domicile. (Haddock v. Hadddock, 201 U. S. 562; Dean v. Dean, 241 N. Y. 240; Ball v. Cross, 231 N. Y. 329.) Neither of the-parties is a resident of that State. The plaintiff has nothing to fear from the action which her husband has sought to bring against her in Florida for on her statement a judgment entered therein would be. a nullity. * * * The foreign court would be manifestly wanting in jurisdiction and its pronouncements without weight.”
It will be noted that the court in holding the institution of a foreign suit for divorce not to be an injury warranting injunctive relief did not place its decision so much on the factual basis of absence of bona fide domicile in Florida, but' relying on the authorities cited as declaratory of the controlling law held that as a matter of law the foreign court would be wholly without jurisdiction to render a judgment of djvorce having any extraterritorial effect in the absence of matrimonial domicile in the State of Florida.
*286 As indicated above, the Haddock case cited in the Goldstein opinion to support the legal conclusion reached by the court has been expressly overruled in the first Williams case (317 U. S. 287, supra). The overthrow -of the Haddock rule necessarily carries with it a rejection of the Dean and Ball cases also cited in the Goldstein opinion, insofar as they rest on the doctrine of the Haddock case.
The marked change in the law concerning the extraterritorial force that must be ascribed to a foreign judgment of divorce obtained in a sister State was recognized in Matter of Holmes (291 N. Y. 261), where the court said at page 267: “In the case of Hubbard v. Hubbard [228 N. Y. 81, 84] * * * this court applied the ‘ adjudged policy of this state to refuse to recognize as binding a decree of divorce obtained in a court of a sister state, not the matrimonial domicile, upon grounds insufficient for that purpose in this state, when the divorced defendant resided in this state and was not personally served with process and did not appear in the action. ’ The court pointed out in its opinion that ‘ it has been conclusively established that such policy is not hostile to the full faith and credit clause of the Federal Constitution. (Art. 4, § 1; Haddock v. Haddock, 201 U. S. 562) ’ Belying upon the rule * conclusively established ’ in Haddock v. Haddock, the courts of this State have applied the same * adjudged policy ’ until December, 1942, when the Supreme Court of the United States in Williams v. North Carolina (317 U. S. 287, 303) reconsidered its decision in Haddock v. Haddock and expressly overruled it. The rule authoritatively established in the Williams case is that ‘ when a court of one state acting in accord with the requirements of procedural due process alters the marital status of one domiciled in that state by granting him a divorce from his absent spouse, we cannot say its decree should be excepted from the full faith and credit clause merely because its enforcement or recognition in another state would conflict with the policy of the latter ’ (Italics new).”
Thus it appears that a new concept has been created under the holding of the first Williams case that domicile sufficient for the purpose of conferring jurisdiction to render a judgment of divorce entitled to full faith and credit elsewhere may be acquired by a migratory spouse, who meets the requirements of a particular State as to residence and effects service of process on the absentee spouse in a manner sufficient to constitute due process. In addition, the former rule making relevant the element of fault in the creation of the matrimonial rift as affecting the right of the offending spouse to acquire a foreign domicile has been eliminated.
*287 It is plain that these changes have had considerable effect on the degree of protection afforded to the nonmigratory spouse. It is no longer possible to rest secure in the belief that the foreign court will be wholly without jurisdiction and its decree void in the state of matrimonial domicile.
It is true that our courts are not bound by jurisdictional recitals in a foreign judgment of divorce and may entertain a collateral attack on such decree upon a showing that the migratory spouse has failed to acquire a bona fide domicile in the divorcing State (Williams v. North Carolina, 325 U. S. 226). Nevertheless, the foreign judgment of divorce once obtained is prima facie entitled to full faith and credit and favored by a presumption of validity that persists until the basis of jurisdiction in the foreign court had been held to be nonexistent (Matter of Holmes, 291 N. Y. 261, 273, supra). It is no longer possible to assert lack of jurisdiction in the foreign court as matter of law because of lack of matrimonial domicile, but a nonmigratory spouse must assume the affirmative burden of a factual demonstration of its invalidity in a collateral attack upon the foreign decree of divorce in our courts.
Defendant, however, reasons that plaintiff is in no danger from any decree of divorce that may be granted by the Nevada courts in view of the fact that her right to attack the bona fides of defendant’s domicile in that jurisdiction has been preserved and she asserts an ability to establish such domicile as merely colorable and sham. From this premise it is argued that no greater necessity for an injunction exists in this case than was present in Goldstein v. Goldstein (283 N. Y. 146, supra) where such relief was denied under somewhat similar circumstances.
We cannot agree with this view, nor do we believe that defendant should be heard to assert such a claim. While he presently maintains a discreet silence with respect to the charge that his domicile in Nevada is sham, we entertain no doubt that .at the proper time defendant will break this silence to obtain his decree from the courts of that State. Neither can there be any doubt that defendant will assert the validity of the foreign judgment when and if he succeeds in the prosecution of that suit. Otherwise, the bringing of the Nevada action would be futile.
In our opinion there is a sufficient and immediate necessity for equitable intervention by our courts to protect the marital status of the wife domiciled in New York. The failure of equity to act at the earliest opportunity when called upon to do so might result in irreparable harm to the domiciliary party who *288 invokes its protection. Certainly there is every reason for a wife in plaintiff’s position to fear the result of a foreign divorce proceeding prosecuted by the husband. It is difficult for her to determine whether she should go to Nevada, if possessed of means to do so, and there contest the bona fides of her husband’s claim of domicile. Such procedure would entail the risk of acquiescing in the jurisdiction of the Nevada courts. The alternative risk in staying quiescent at home involves the possible inability to procure later the proof she now has to establish the husband’s lack of bona fide domicile in the foreign jurisdiction.
We find that under the circumstances the question of defendant’s good faith in establishing the Nevada domicile should be litigated in this State of matrimonial domicile rather than in the courts of the State of defendant’s selection and now rather than later. At this time the court has jurisdiction over the persons of the parties to this action. It may not be able to obtain such jurisdiction at another time. There is an additional advantage in the greater facility afforded to plaintiff of establishing her claim that defendant has in fact continuously maintained his domicile in this State by producing witnesses who reside here to give testimony in relation to that issue. Whatever may be the extraterritorial force and effect of a judgment rendered in this action for injunctive relief, it may well be that the findings made with respect to domicile of defendant or perhaps evidence adduced in relation to that question upon the trial of this action may have some bearing on the decision in the husband’s action for divorce in the courts of Nevada.
The decision of this court in Carr v. Carr (267 App. Div. 980, affg. 52 N. Y. S. 2d 386 [not officially reported]) on which the Special Term relied for denial of plaintiff’s motion for a temporary injunction is clearly distinguishable. In that case we affirmed an order denying injunctive relief against a husband domiciled in New York who was threatening to resort to the courts of another State for the purpose of obtaining a dissolution of the marriage. The distinction between the mere threats as in the Carr case and the actual commencement of divorce proceedings in the foreign State as in this case takes on added significance today in view of the presumption .of validity attaching to the foreign judgment once it is obtained.
Nor does there appear to be anything said or decided in the recent case of Estin v. Estin (296 N. Y. 308) in conflict with the views expressed in this opinion. In that case the husband went *289 to Nevada where he acquired a bona fide domicile and instituted an action for absolute divorce against his wife, who continued to reside in New York and was constructively served with process in this State. Though it was required that recognition be accorded to so much of the Nevada decree as pronounced the dissolution of the marriage, the question for decision was “ whether the Nevada decree must also be taken to have can-celled the alimony provision made for the wife through the prior judgment in this New York separation action.” The Court of Appeals held that the judgment of separation in respect to its provisions for alimony was unaffected by the foreign judgment of divorce rendered without jurisdiction over the person of the wife. In the Estin case the court was concerned solely with the private rights of the wife under an earlier judgment of separation granted by the courts of this State, whereas our concern in this case is broader and includes rights flowing from status. Here we have had no finding as yet in respect to the husband’s domicile in the foreign State. On the contrary it is lack of domicile that is asserted and sought to be established. Under the law as it exists today it is possible to place the marital rights of the wife in danger of destruction, if full faith and credit is required to be extended to the foreign decree. It is clear that a proper concern for our domiciliary indicates the necessity for immediate action.
This conclusion is reached with deference to the authority of Goldstein v. Goldstein (283 N. Y. 146, supra), which we believe is not controlling in the light of the change in the law effected by the intervening decision of the Supreme Court of the United States in the first Williams case. We feel that the Goldstein decision would have been different under the circumstances now found to be prevailing. Accordingly, we hold that the bringing of the Nevada action by defendant is a sufficient injury to plaintiff to justify this court in granting injunctive relief to preserve her rights as well as safeguard the interests' of the State in the welfare of its domiciliary and in its judgment and order, until our highest court can reappraise the question. We so hold as a matter of law upon the undisputed facts in this case and not in the exercise of discretion.
The order should be reversed, with $20 costs and disbursements to the appellant and the motion granted.
Settle order providing for the issuance of an injunction pendente lite upon plaintiff’s furnishing an undertaking in the sum of $250.